## MOORE *vs.* THE HUDSON RIVER RAILROAD COMPANY.

Where persons contracting to perform certain work, in constructing a railroad, agreed to receive a portion of their compensation in the stock of the company, at its par value, to be paid within thirty days after the receipt of the engineer's certificate of completion; *Held,* that the company were not bound to seek the contractors and tender the stock, on the day.

Such a contract is an agreement to receive payment in a depreciated currency, and not an agreement to pay a certain sum in *specific articles.* Hence the rule requiring a *tender* does not apply.

It is no excuse for refusing to receive such stock, that the railroad company has, since the making of the contract, procured from the legislature an alteration of its charter, by which the stock and debt of the company is increased; where it appears that the right to alter the charter was reserved by the legislature, in the act of incorporation, and there is nothing to show that such alteration *depreciated* the value of the stock.

Nor will a refusal to receive the stock be justified by the fact that, after the making of the contract, the directors of the company determined not to pay interest upon the stock, *in cash,* as they had formerly done; such a change not necessarily impairing the *value* of the stock; and there being no stipulation in the contract that interest should be paid at all, upon the stock.

In all the cases where the plaintiff has been allowed to recover the whole amount in money, because the articles were not tendered, the agreement contemplated property of *equal* value with the sum to be paid. *Per* BARCULO, J

Moore *v.* Hudson River Railroad Company.

THE plaintiff, as assignee of Wright, Mallory and Smith, contractors for sections 42 and 24 on the Hudson River Railroad, brought this suit against the company, to recover an alledged balance due to them for constructing those sections. The action was referred to referees, who reported in favor of the plaintiffs for $22,579,24, and judgment was entered thereon. The defendants took a bill of exceptions, and appealed to the general term. By the contract between the parties under which the work on section 42 was performed, executed May 23, 1848, it was stipulated that the work done should from time to time be estimated, by the engineer, and that the company would pay, in current bank notes of the New-York city banks, within twenty per cent of the amount of the estimates, on presentation; and when the contract should be completely performed, on the part of the contractors, and the engineer should certify the same in writing, together with his estimate, the company should, within thirty days, pay to the contractors in current notes of the New-York city banks, within twenty per cent of the amount which, according to the contract, should be due; and that the said twenty per cent of the total amount of the work under the contract, as certified by the engineer, should be paid in the capital stock of the said railroad company, at its par value. A similar contract was entered into between the parties in respect to section 24, containing a stipulation for the payment to the contractors of *ten* per cent in the capital stock of the company at par. The only facts in the case, material to be noticed, are stated in the opinion of the court.

*W. Fullerton*, for the plaintiff.

*C. O'Conor*, for the defendants.

*By the Court*, BARCULO, J. The only part of this case we deem it important to examine particularly, is the effect of the stipulation by the contractors to receive a portion of their compensation in the stock of the company, at its par value. In all other respects we think the report of the referees must stand.

It appears that the original contractors—Wright, Mallory and Smith—agreed to do the work on two sections of the defendants' road, and were to be paid in the stock of the company at its par value, to the extent of twenty per cent on one section, and ten per cent on the other. At the date of the contract the stock was worth 54 per cent; and, at the commencement of this suit in April, 1849, it was worth 59 per cent.

The plaintiff, who has become the assignee of the contracts from Wright, Mallory and Smith, now refuses to receive the stock in payment, and demands the whole amount of its par value in money; which claim he bases upon the grounds,

1. That the defendants did not seek him and *tender the stock on the day.* He endeavors to bring himself within the principle applied to agreements to pay in *specific articles,* which the party agreeing to pay is bound to tender. (*Lamb* v. *Lathrop,* 13 *Wend.* 95. *Goodwin* v. *Holbrook,* 4 *Id.* 377. *Sheldon* v. *Skinner,* 4 *Id.* 525. *Lafarge* v. *Rikert,* 5 *Id.* 187. *Lobdell* v. *Hopkins,* 5 *Cowen,* 516.) After a careful consideration of the foregoing and numerous other cases, we are of opinion that the principle running through them has no application to the present case. This is not an agreement to pay a certain sum in *specific articles.* It is an agreement to receive payment in a depreciated currency—in stocks known to be much below par. The contract was undoubtedly made, and the prices fixed with direct reference to the medium of payment; and we are unable to discover any principle of equity or law which can entitle the plaintiff to recover nearly double the value stipulated for, by reason of the non-delivery of the stock on the day. In all the cases where the plaintiff has been allowed to recover the whole amount in money, because the articles were not tendered, the agreement contemplated property of *equal* value with the sum to be paid. The medium of payment was selected for the convenience of the debtor; and, if he failed to avail himself of the arrangement made for his accommodation, no injustice could be done by exacting the sum in money. But the case before us is clearly distinguishable from those; and we think

that the defendants were not bound, for this reason, to seek the plaintiff and tender the stock.

But even according to the cases on this subject above cited, it is not always incumbent on the obligor to make a tender. It is frequently necessary for the creditor to make a demand before his action can be maintained. Thus, where a merchant gives a due bill, payable in goods, the holder must present his claim at the store where the articles are. So of a mechanic's obligation to pay in work. So an agreement to pay in *farm produce* has been held to impose upon the creditor, the duty of demanding payment at the farm of his debtor. (5 *Cowen*, 516.) All that is required of the obligor, in such cases, is that he should be ready at the place. This rule arises from the nature of the contract itself. The place of performance is not expressed, but is *implied* from the character of the thing to be done. Tested by this rule, the contractors would be bound to present themselves at the office of the company to receive the stock at the hands of the proper officers, whose duties require them to make the necessary entries in the books, and furnish to the stockholders the appropriate written evidence of their rights and interests. This we consider fairly, if not necessarily, inferable from the terms of the contract.

2. But the plaintiff objects to receiving the stock, also, upon the ground that the defendants have, since the making of the contract, procured from the legislature, an alteration of the charter, by which the stock and debt of the company is increased. The answer to this is twofold. *First.* The right to alter the charter was reserved by the legislature in the original act; and all who deal with them are bound to know it. *Second.* There is nothing to show that such alteration *depreciated* the value of the stock. So far as we can gather from the voluminous documents before us, there is good reason to believe that the alteration was beneficial to the stockholders;—in fact that the chief value of the stock at present, is owing to the increased capital and loans which enabled the company to prosecute the work to completion.

3. Another reason assigned by the plaintiff for claiming to

be absolved from that portion of the contract relating to the stock, is that the directors subsequently determined not to pay interest in *cash*, as they had formerly done. To this objection it may also be answered, that such a change does not necessarily impair the *value* of the stock. For if, by substituting stock for cash, in the payment of interest, any thing was saved by the company—as there doubtless was—it would accrue to the benefit of the stockholders and necessarily enhance the real value of the stock. Especially is this true, as applied to the plaintiff, who was *thereafter* to become a stockholder. If any persons could rightfully complain of the new arrangement, they were the original subscribers who had come in at the par value. But as to those who were to take stock subsequently, it is quite clear that all that could be made by not paying interest in cash to the old stockholders, must benefit the condition of subsequent stockholders. For every payment of interest or dividends was a diminution of the property of the company, to that extent.

But it is said that this proceeding, although it may not have diminished the actual value of the stock, would tend to reduce its *market price*. This might be the case temporarily. But to assume that it would occasion a *permanent* depression, is to impute to purchasers the folly of paying a high price, in proportion, as the concern was badly managed. The natural and reasonable consequence would rather be to increase the market price; for men of discernment must soon discover that the affairs were safely and prudently conducted, which would tend to establish the company in the public confidence.

But the true answer to this whole objection is, that the directors had an absolute right to regulate the payment of interest as they pleased; and whether they continued it at all or not, was a matter with which the contractors have nothing to do. It is not pretended that there was any stipulation in the contract that interest should be paid at all upon the stock; and in the absence of such stipulation the plaintiff has nothing whatever to say upon the subject. The question of dividends depends upon the condition and profits of the company, and is a subject over which the directors must have an unlimited discretion.

The referees erred, therefore, in allowing the plaintiff to re-cover for the stock, and the judgment entered upon the report must be reversed *pro tanto*, and affirmed as to the residue, with a re-adjustment of costs and per centage. If the plaintiff does not elect to take such judgment for the balance, then the judg-ment is absolutely reversed and a new trial ordered at the circuit.