## Hart *vs.* Lauman and others.

The defendants were partners, engaged in building the A. and H. rail road. The plaintiff entered into a written contract with them to do a part of the excavation &c. on the road, and commenced work under such contract. Unexpectedly encountering a hard material, which was difficult of excavation, he gave notice to the defendants that he could not go on and excavate that material at the price named in the contract, and must abandon the work, unless the defendants would allow more than the contract price, for such material. The defendants told him to quit that portion of the work until some arrangement could be made in regard to it. The plaintiff did quit the work, for about two weeks, when it was resumed, under a new agreement, by which he was to have a reasonable compensation for excavating the hard material. *Held*, that this amounted to such a rescission of the original contract, in respect to that portion of the work, as would have precluded the defendants from maintaining an action to recover damages for its non-performance afterwards.

And the referees having found that the parties, after such rescission, made a new agreement, for the payment of a reasonable compensation to the plaintiff for that part of the work consisting of a hard material; it was *further held*, that such agreement was valid and binding, and would control, instead of the first agreement.

The defendants having agreed to pay ten per cent of the contract price of the work in the stock of the rail road company, and having failed to tender such stock until after it had become depreciated and utterly valueless; *Held* that they had by their own neglect forfeited their right to pay the ten per cent in stock.

*It seems* that under the contract, the plaintiff was entitled to the ten per cent

Hart *v.* Lauman.

in stock at its current market value, at the time payment should have been made or offered.

An agreement to pay a specified amount in the capital stock of a corporation, without naming any price, per share, or otherwise, is an agreement to pay stock to that amount in value, according to its market price, at the time.

And if performance of such a contract becomes impossible, by the depreciation of the stock so that it has no money value whatever, the amount agreed to be paid in stock is recoverable in money.

A stipulation, in a contract for work to be done upon a rail road, that all questions in dispute, as to any matters connected with, or growing out of, the contract, shall be submitted to and decided upon by the chief engineer and consulting engineers of the company, is no bar to an action upon the contract.

APPEAL from a judgment entered at a special term upon the report of referees. The complaint contained three causes of action. The first set forth, that about the 1st day of April, 1851, the plaintiff and one Simon Spear contracted with the defendants to do work on a rail road, which was done by the plaintiff, as was also other work not embraced in the contract, to the amount of $10,856.14. The second set forth, that the defendants refused to allow the plaintiff to do certain portions of said work, and caused detentions in doing certain other portions, to the damage of the plaintiff of $1568.25. The third cause of action was a general count for work, labor and materials, in which the plaintiff claimed to recover $10,846.14. The answer set up six separate defenses. The first was a general denial of the whole complaint. The second set forth that on the 1st of April, 1851, the defendants made a contract in writing with the plaintiff and one Spear, to do work and furnish materials, on a rail road, at prices therein mentioned; which was done and furnished by the plaintiff, and paid for by the defendants according to said contract; and which work and materials were the same mentioned in the complaint. The third set forth that in 1851 the plaintiff did work and furnished materials for the defendants, on said rail road, to the amount of $250, for which he was fully paid, and that it was the only work not embraced in said contract. The fourth alleged that the

defendants had paid the plaintiff for all work &c. on said road, and all other work. The fifth alleged that the defendants had paid the plaintiff for all damages mentioned in the second cause of action; and the sixth set forth that the defendants had advanced to the plaintiff $12,500, which remained due and unpaid, and which the defendants claimed to set off. The reply denied generally all the allegations of new matter, in the answer.

The action was referred to three referees, who made their report, by which they found due to the plaintiff $4393.93, and from the judgment entered upon such report the defendants appealed to the general term. The judgment was reversed, on that appeal, and a new trial ordered. After a second hearing before the referees, they made their report, by which they found, as facts, that on or about the first day of April, 1851, the defendants were partners in building the Attica and Hornellsville rail road; that the plaintiff and one Spear, on or about that day, entered into a contract with the defendants in writing under seal, (a copy whereof was annexed to the defendants' answer,) to do a part of the work on the said road; that Spear afterwards, and with the consent of the defendants, assigned all his right and interest in and by the said contract to the plaintiff; that when the said contract was entered into as aforesaid, the sections of the road were marked out by stakes at either end; that after Spear had assigned to the plaintiff, and after the plaintiff had entered upon his work under the contract, the defendants, without the consent of the plaintiff, removed the stakes which marked the eastern terminus of the section 45, about 1500 feet westward, and took away from the plaintiff that portion of the road specified in the contract; that the plaintiff in building the road struck upon a hard material in section 42 of said road, which was of difficult excavation; and after he had excavated a portion of said hard material, and in or about the month of August, 1851, the plaintiff informed the defendant Lauman that he could not go on with said work for the prices named

Hart *v.* Lauman.

in the contract, and that he would abandon the work if the defendants would not allow him a greater compensation for excavating the said hard material; that Lauman told the plaintiff to quit that portion of the work until some arrangement could be made in regard to it; that the plaintiff did thereupon quit and abandon said portions of the work; that in about two weeks thereafter the plaintiff resumed said work, under an agreement with the defendants that they would allow him a reasonable compensation for excavating the material aforesaid; that the amount of said material excavated by the plaintiff, after said agreement, was 6100 cubic yards, and the value of the same 40 cents per cubic yard; that in or about the month of September, in the year aforesaid, the plaintiff and defendants made an agreement that the plaintiff should be paid for extra haul on sections 42, 43 and 44; that no price was agreed upon for such extra haul, but' the value thereof was eight mills per cubic yard for each 100 feet of extra haul; that the amount of said haul was as stated and set forth in schedule C, annexed, amounting in the whole to $1813.42; that while performing the work aforesaid, the plaintiff at the request of the defendants did other extra work, and found materials for them of the kind and value mentioned in schedule B, annexed; that all of the work done by the plaintiff under said contract, and under said contract as modified, and all the extra work done by him, and the material furnished as aforesaid, were done and performed to the satisfaction of the defendants, and accepted by them as satisfactory and complete; that all of the said work, except what is called extra work, hard material and extra haul, was done under and for the prices mentioned in said contract; that all of the work herein mentioned was allowed by the defendants to the plaintiff according to the conclusions and estimates of the engineer of the rail road company, so far as any estimates were made by him; that he never measured or made any estimate of the amount of embankment settled, nor did he make and return an estimate of the clear-

ing and grubbing, according to the contract between the parties; that the kinds and amount of work done by the plaintiff under and for the price named in said contract were as set forth in schedule A, annexed, amounting in the whole to the sum of $12,522.23; that the extra work, except extra haul and materials done and furnished by the plaintiff as aforesaid, were set forth in schedule B, annexed, amounting in the whole to the sum of $534.38; that the whole amount of work done by the plaintiff for the defendants and materials furnished as aforesaid, the value of which was found by the referees, was worth the sum of $17,310.03, and was as set forth in schedule C, annexed; and the referees found that the defendants paid the plaintiff thereupon the sum of $12,111.72, and no more. And they also found as a conclusion of fact, that on or about the 19th day of December, 1857, the plaintiff went to the office of the defendants at Portage, N. Y., for a settlement, and demanded payment of whatever balance was due him for the work and materials aforesaid, and the referees found that the same was upwards of $5000; and that the defendants by their showing on the trial and the basis assumed by them, made to have been due to him then about $800; that the defendants then offered him in full payment of the amount due him $18.93 in money, and an order on the treasurer of the rail road company, at Buffalo, for a certificate of $550 of the capital stock of the said company and that the plaintiff refused to receive the same, in full payment, but in no otherwise refused; that the value of the said stock at the time of the offer in payment as aforesaid was 90 cents on the dollar of nominal value, and at the time of the trial was worth nothing; and the referees also found that, except the circumstances of the offer of the stock for $550 as aforesaid, there was no proof before them that the defendants owned any of the stock of said company.

And the referees found as conclusions of law, that the plaintiff was not by any of the covenants of the said contract debarred from commencing an action in this court against the defendants to enforce any right which he might have thereby;

that the plaintiff was bound by the estimates of the engineer; so far as the same were made, for work done under said contract, but as to other work he was not so bound; that the plaintiff having made a demand, at the place of business of the defendants, of them, for the amount due to him, and the defendants having made a tender in full of an amount insufficient to pay that balance, the plaintiff was not obliged to take it; and that he is not now obliged to receive from the defendants any stock in payment of the balance which they found and reported due and payable to him, and that the whole of such balance was payable in cash.

And they decided and reported that the plaintiff was entitled to recover and have judgment against the defendants for the sum of $5198.31, and costs. From the judgment entered upon that report, the defendants again appealed.

*H. S. Cutting*, for the appellants.

*James C. Smith*, for the respondent.

*By the Court*, JOHNSON, J. The referees have found, upon the new trial, that 6100 cubic yards of hard pan were excavated, under a new and separate agreement, by which the plaintiff was to receive a reasonable compensation for his services in making such excavation, which they find to be forty cents per cubic yard. This agreement, upon the new finding, was a valid one. The plaintiff, according to this finding, after unexpectedly encountering this hard material, gave notice to one of the defendants that he could not go on and excavate this material at the price named in the contract, and must abandon the work, unless the defendants would allow more than the contract price for such material. The defendant Lauman, to whom this notice was given, then told the plaintiff to quit that portion of the work until some arrangement could be made in regard to it; and the plaintiff did quit it for about two weeks, when it was resumed under the new

agreement. It is plain, I think, that what took place between the parties, followed as it was by the plaintiff's quitting the work, was such a rescission of the original contract in respect to that portion of the work, as would have precluded the defendants from maintaining an action to recover damages for its non-performance, afterwards. The parties were then in a situation to make a new agreement, for that part of the work, which would be binding, and would control, instead of the first agreement. It is claimed on the part of the defendants, that the evidence does not warrant this finding of the referees. But there is certainly evidence tending to this conclusion of fact, and indeed the whole evidence shows, quite conclusively, that the defendants did not expect the plaintiff to take out this hard material, at the price specified in the contract for common earth. I do not think we would be justified in setting aside the report of the referees, upon this branch of the case, on the ground that it is without evidence to support it.

The question of the right of the defendants to pay ten per cent of the contract price of the work in the stock of the rail road company, is now presented in an aspect materially different from that in which it was presented by the former report. We then held that inasmuch as the defendants had not refused to transfer the stock, but had, on the contrary, offered to do so in a manner not objected to by the plaintiff, they had not forfeited the right to pay the amount specified in such stock. No question as to the value of the stock arose on the former trial; the only question then being, whether the defendants had offered a sufficient amount in stock at its nominal or par value. It now appears, from the report of the referees, that at the time the offer, such as it was, to pay in stock was made, such stock was worth only ninety cents on the dollar, of nominal value; and that at the time of the last trial it was utterly worthless, having no value whatever.

The defendants, on that occasion, offered the plaintiff $18.93 in money and an order on the treasurer of the company, at

Buffalo, for a certificate of $500 of the capital stock of the company, as payment in full of the amount due him. This was refused by the defendant, on the sole ground as found by the referees, that it was not sufficient to pay the amount due. The referees find that there was at least $800 due from the defendants to the plaintiff, upon the grounds assumed and claimed by them, and upwards of $5000, in point of fact. The plaintiff, of course, was not bound to take the two amounts, or either of them, as it was offered. No question seems to have been raised between the parties as to the value of the stock, or whether it was to be received at its nominal, or at its market value, by the plaintiff; as a sufficient amount was not offered in either case; and all the plaintiff was called upon to do was to decline accepting it as offered. The question now arises whether the defendants can now pay the ten per cent in stock, and whether their right to do so is not necessarily forfeited in consequence of the stock having become utterly valueless in their hands, before they have performed or offered to perform according to the agreement. It is to be inferred, I think, that the defendants were the owners of the stock, or of a sufficient amount thereof to have satisfied the first demands of the plaintiff; and it was in their power at any time to have discharged their obligation by tendering the amount in stock actually due, which they have failed to do. The question whether they should have tendered the amount due, at its current market value, or at the nominal value of the shares, does not necessarily arise here, as they made no sufficient tender, or offer of payment, while the stock had any real or market value, and it has now passed beyond all valuation, for any purpose. I am inclined to the opinion, however, that the plaintiff, under the contract in question, was entitled to the ten per cent in stock at its current market value at the time payment should have been made or offered. Stock in a corporation is not money; nor is the certificate by which the ownership of it is evidenced, in any sense the representative of money; nor is it an obligation or security for the

payment of money. It is personal property merely, of a peculiar kind, it is true, but still a personal and marketable commodity, having a market value the same as any other commodity, which is the subject of bargain and sale in the market. (*Mechanics' Bank* v. *New York and New Haven R. R. Co.,* 3 *Kern.* 627. *Bouv. Law Dic. Stock.*) By the terms of the agreement the defendants undertook to pay ten per cent of the amount earned under the contract, in the capital stock of the corporation, without any price per share, or otherwise, named in the agreement. This was, I think, an agreement to pay stock to that amount in value, according to its market price at the time, the same as though payment was to be made in any other kind of personal property which has no uniform and fixed price. This being so, payment in stock is rendered impossible, and the defendants, by their own neglect, have forfeited and lost all right to pay the ten per cent in the stock of this corporation. At the time the agreement was entered into, the stock had a money value, and it was this value which the parties had in contemplation, and which was to extinguish the indebtedness. The contract would not, therefore, be performed according to the meaning and intent of the parties, by the transfer of any amount of capital stock, however large, nominally, without any money value whatever.

It is obvious that an obligation to pay a definite sum in grain or any other personal property would not be performed by a tender of property of that description, so injured or decayed as to be utterly valueless. It seems to me, therefore, as the obligation cannot now be performed by the transfer of the stock specified, the amount is necessarily recoverable in money. It was no part of the intention, in making the agreement, that the plaintiff should lose the ten per cent, and the law will provide a remedy to prevent such a loss. In the case of *Moore* v. *Hudson River R. R. Co.,* (12 *Barb.* 156,) the plaintiff agreed to take the stock at par.

The stipulation in the agreement, that all matters in dispute, as to any matter connected with, or growing out of, the

contract, should be submitted to and decided upon by the chief engineer and consulting engineers of the company, was no bar to the action. (*Haggart* v. *Morgan*, 1 *Seld.* 422.)

The engineers' estimate of twenty-five cents per cubic yard, for the hard material, is not conclusive upon the plaintiff, as to value or price. If there was no agreement as to price, he was entitled to what it was reasonably worth to make the excavation. The estimate may afford some evidence of a price fixed, but it is not conclusive; and the referees have found that no price was agreed upon, but that the plaintiff was to have what it was worth.

The monthly estimates were not conclusive as to the amount of work done, and the receipt of payment thereon did not operate as a final settlement and adjustment of the work from month to month.

Several other questions were raised, though not much pressed upon the argument; but it seems to me there is nothing in any of them which would warrant a reversal of the judgment.

On the whole, I am of the opinion that the judgment must be affirmed.

[CAYUGA GENERAL TERM, June 6, 1859. *T. R. Strong, Smith* and *Johnson*, Justices.]