Wright, J.
The question of power is the only one presented in connection with the assessment, as the proceedings for making it are admitted to have been regular. It was an assessment for expenses incurred in constructing a sewer in one of the streets of the city. The city charter provides that the common council may cause sewers to be constructed, and the expense thereof to be assessed upon the real estate benefited by such improvement in proportion to the benefits resulting thereto. Power is given to determine the amount to be assessed for the improvement, and to direct the city assessors to assess the amount so fixed. (Laws of 1854, p. 143, § 19, of title 8 of charter as amended.) And it is further provided in the charter, that in case any assessment shall prove insufficient to defray the expenses of the improvement for which it was made, the common council may direct a further assessment for the. amount of the deficiency, (Laws of 1853, p. 503, title 8, § 32.) In this case ■ the corporation ' ordered the construction of a sewer, and simultaneously determined that the amount to be assessed for the expense of the same be the sum of §1,058.63, and directed the city assessors to assess the sum upon the real estate benefited by such improvement; and the amount was so assessed. Afterwards the corporation contracted with one Eandolph to construct the sewer for the sum of §1,058.63,- and Eandolph gave security for the performance of the contract on his part. Whilst prosecuting the work,. and before its completion, he struck a body of quicksand below the surface of the earth, of great extent, and directly in the line of the sewer—the existence of which was theretofore unknown to' both the contracting parties, and could not have been anticipated by either of them. The existence of the quicksand increased the expense of the construction of the sewer to such an extent that it was impossible for Eandolph to construct and complete the same for twice the amount of the contract price; where- '■ upon he stopped working on it, and, in conjunction with *211 several of the plaintiffs, petitioned the common council to increase the contract price for building the sewer, to indemnify him for the loss which he would sustain by reason of the existence of such quicksand, if he should go on and complete the sewer for the contract price: Upon such petition the common council determined to pay and allow to Randolph the additional su of-$588.13 on his contract, for the reason that the. expense of constructing the sewer was,greatly increased over the estimated cost and contract price thereof, in consequence of the existence of the quicksand; which additional sum was no more than a reasonable compensation over and above the contract price; and, in fact, insufficient to pay the actual expenses which Randolph was put to in the building and completion of the sewer. Randolph would have abandoned the work in its incomplete and Unfinished state unless the additional allowance had been made to him as an indemnity for the loss which he would have sustained by reason of the quicksand, and this intention was known to the common council. To raise this sum of $588.13, the common council directed the city assessors to assess the same upon "the real estate deemed benefited by the construction of the sewer, to pay therefor; and such assessment was made accordingly. It is this latter act which the plaintiffs, owners of real estate in the city benefited by the improvement, insist is illegal and void.
The ground assumed by the plaintiff is, that the common council, having determined the expense of the sewer, directed the assessment thereof; contracted with Randolph to construct it for the amount so assessed, and taken ample security for the fulfillment of the contract, had no power to order or direct a further assessment, except upon the contingency happening, as provided for in the charter, of the assessment made proving insufficient, which contingency could not happen so long as the contract with Randolph remained in force, he not only having agreed to construct the sewer for the amount of the first assessment, at all *212 events, but had given security for the performance of his undertaking. That until this agreement should be cancelled by the contracting parties, or abandoned by Randolph, and the remedy against him and his sureties exhausted, and found to be insufficient to indemnify the city, the common council had no legal power to direct a further assessment.
I am not prepared to concur in this view of the corporate power. The power to construct sewers, and assess the expense thereof upon the real estate benefited thereby, is expressly conferred upon the defendant by its charter; and there is no restriction upon the exercise of such power. The power to make the public improvement embraces all the incidental powers usual and necessary for that purpose; and in making the contract in this case, the corporation was not bound to provide for the payment of the work out of any particular fund, but could have bound itself to pay it generally. (Cummings v. The City of Brooklyn, 11 Paige, 600.) It could have contracted to pay in cash or upon credit, or it need not have contracted at all, but could have purchased its own materials and employed its own labor; and in like manner it could have contracted with different persons for the performance of different parts of the work; and such contracts might be made at different times. Having made a contract for the construction of the sewer, in this case, it could afterwards have cancelled or modified it by increasing the contract price. In short, it could deal with it in the same manner as if it were a natural person. In the case of Brewster v. The City of Syracuse, (19 N. Y. Rep. 116), the city was prohibited by its charter from paying any compensation above the contract price, and accordingly the contractors, in that case, for the construction of a sewer, obtained a special act authorizing the common council to assess and collect, in the same mm. ner as the expenses of constructing the sewer were by law authorized to be assessed and collected, the sum of $600, *213 and to pay it over to the contractors in addition to the contract price. The defendant’s charter contains no such prohibition. In the case referred to the contractors had completed the work, and had been paid the full price stipulated in the contract. Here the contractor, when he struck the quicksand, was about abandoning the work, in an unfinished state. He applied to the defendant for additional compensation, which was acceded to the amount of §588.13. It is not pretended that the defendant might not have released Eandolph altogether from his contract, notwithstanding he had given security for its performance, or rescinded it, and entered into a new engagement to secure the completion of the work. So, also, the city could agree to pay an additional compensation in consideration that he would go on and complete the sewer. And this was the effect of its action, and, in my judgment, such action was not only legal but eminently just. Eandolph was performing his contract in good faith, when he encountered a-body of quicksand, of great extent, directly in the line of the sewer, the existence of which was unknown both to himself and the defendant at the time of contracting, and which rendered it impossible for the former to construct the sewer for twice the sum provided for in the contract. This latter sum was the same as the original estimate of the expense of construction made by the common council, but neither in the estimate or contract, was something unknown and not anticipated, which was largely to increase the cost, taken into account. It is true the corporation might have refused additional compensation, arrested the work in its unfinished state, brought an action on the contract, and, if Eandolph and his sureties were solvent, per-, haps ultimately recovered from them a sum by way of damages equal to the cost of constructing the sewer. But was the corporation bound to do this? I think not. It is conceded that the parties might have cancelled the agreement, and, if they could do this, they could certainly *214 modify it. I know of no rule' of law that would hinder a municipal corporation, having power to make a public improvement, and incidentally the power to contract for doing the work, from increasing the contract price, under circumstances equitably justifying it, unless prohibited from doing so in its charter. Under the circumstances of the case the defendant, in increasing the contractor’s compensation, did what any prudent man would have done; and corporations are not required to deal differently with their contracts. I think there was a sufficient consideration to support the promise to pay the additional compensation; but suppose this were otherwise, and hence the contract incapable of being enforced against the city, the plaintiffs have no such relation to it as to entitle them to raise the objection.
We have, then, the case of a municipal corporation empowered to make a public improvement, the expense of which is to be borne, not by the whole city, but by the real estate owners benefited by it. The corporation is to do the work, and the expense thereof to be ultimately assessed upon the property benefited. The corporation, by its appropriate officers, could either do the work itself, or contract for doing it. In .case of a contract, where the work is performed, the contractor can look alone .to the city for payment; and if the corporation should, voluntarily or by compulsion, pay the. expenses of the improvement out of the general fund, any taxpayer might compel the reimbursement of such fund by an assessment on .the property benefited. (Cumming v. The City of Brooklyn, 11 Paige, 600.) In this case the corporation is empowered to determine the amount of the expenses, and direct an assessment to be made for such amount, whatever it may be. This determination may be made, and direction given before or after the work is completed. There is nothing in the charter requiring the defendant to order the assess'.tnent before the improvement is made. Indeed, where the *215 cost of the improvement exceeds $200, the sum requisite for the expenses can only be estimated, and such estimate can only approximate to the actual expense of the improvement. It is the expense of the improvement that the defendant is to cause to be assessed on the real estate benefited by it. Should the corporation order an assessment upon an estimate made before the completion of the work, and it turned out, from any cause, to be insufficient to meet the actual cost, there can be no doubt of its power to order a further assessment. If this were otherwise, the city might be saddled with a portion of the expense of the improvement, which the law has imposed exclusively on the locality benefited by it. There is, consequently, nothing in the suggestion, in this case, that the defendant having once determined the amount to be assessed for the sewer, could not change it, or order a further assessment except under the section of the charter providing for the happening of a deficiency, and that then the deficiency must be so occasioned that there is no other adequate remedy but by a further assessment. The duty being imposed on the defendant to make the improvement and cause the expense thereof to be assessed on the land benefited, if one assessment be directed and it is insufficient to meet' the actual expense of such improvement, a further assessment may be made. As the expenses must be paid by the property owners of the locality benefited,. the power is necessarily implied to assess for all such expenses.
I am of the opinion, therefore, that although the defendant in this case once ordered an assessment to pay the expense of constructing the sewer, if from any cause the first amount fixed and assessed proved insufficient to defray the actual expense of the improvement, it had not only the power, but it was its duty to order a further assessment. But it is not even necessary to go as far this, as I think the assessment in question was specially authorized by the *216 defendant’s charter. It is provided in §32, title 8 of the charter, that in case any assessment shall prove insufficient to defray the expenses of the improvement for which it was made, the .common council may direct a further assessment for the amount of the deficiency. The 19th section of the same title provides that the common council shall determine the amount to be assessed for 'such improvement, and direct the city assessors to assess the amount so fixed. In pursuance of this authority, in the present case the common council did determine the amount to be assessed, and the work was contracted to be done for that amount. This afterwards proved to be insufficient, and the common council, for the purpose of supplying the deficiency and insuring the completion of the work, directed the making of the assessment in question. The power is general to order a further assessment in any case, where the amount first fixed and assessed shall prove insufficient to defray the expenses of the improvement. The aim of the provision is, that the burden of the improvement shall fall wholly upon the locality benefited, and no part on the city generally. ' If the corporation itself should do the work, and it turned out that an assessment made to defray the expense was insufficient, the case would clearly fall within the power expressly conferred. So, if the corporation before entering on the work should estimate the expense thereof, and direct the amount estimated to be assessed, contract for the execution of the work at the amount so directed to be assessed, and the contract made should be subsequently abandoned (as it is conceded it might be), or when, from other causes unforeseen by the parties, the expenses of construction are necessarily increased beyond the original estimate and assessment, there is a “ deficiency” within the meaning of the section, to be provided for by a further assessment. Here an assessment had been made in conformity to a particular estimate, and the work contracted for at the amount of the estimate. A cause unforeseen by the parties is about *217 .o lead to an abandonment of the work in its half-finished state, when the corporation agree, with the view of insuring its completion, to increase the contract price, and the work is accordingly completed. The original assessment to defray the expenses of the improvement has certainly proved insufficient. There is a deficiency in the amount of such assessment. I think the statute was designed to provide for such a case as this; and that the assessment in question was “ a further assessment” within the meaning of § 32, of title 8, of the defendant’s charter.
The order of the supreme court should be affirmed, and judgment absolute rendered against the plaintiffs.
Johnson, J.
The only question presented in the case is, m regard to the power of the defendant, through its common council, to order the second assessment for the completion of the sewer. It is claimed, on the part of the plaintiffs, that the common council having once determined the expense of the sewer and made an assessment to meet such expense—and also seemed the construction and completion of the work by contract, with security for its performance, for the sum thus assessed—had spent all their power, and could not, while the contract was still in force, make an additional allowance and a further assessment for the completion of the same work by the same contractor. By the charter of the city of Buffalo (Sess. Laws of 1856, p. 143, § 19), it is provided that “ the common council may cause sewers to be constructed and repaired; that they shall determine the amount to be assessed for such improvement, and direct the city assessors to assess the amount so fixed.” By section 20, it is provided that the amount shall be assessed upon the parcels of land to be benefited by the improvement; and by section 32 it is provided, that in case the assessment shall prove insufficient to defray the expense of the improvement, the common council may direct a further assessment for the amount of the deficiency. *218 Here the power is given by the express terms of the charter, to make a further assessment in case the first should prove insufficient to defray the expense of the improvement. The fact is established by the finding and decision of the judge, that the first assessment was insufficient to defray the expense óf the improvement,' and that both assessments together were insufficient to defray the actual cost of the work. It is contended,, however, by the appellants, that the expense must be construed to mean the contract price, _ and nothing else; and that, inasmuch as the completion of the entire work was secured by contract, for the amount of the first assessment, there could be no insufficiency. But the first contract was not the one under which the work was done. It was commenced under the first contract, but was continued and completed under a new contract, which provided for the payment of an amount equal to both assessments. According to the contract, therefore, under which the work was earned on to completion, the first assessment was clearly insufficient to defray the expense, even if the contract price is to control entirely in the matter of expense. That the, last contract between the defendant and Randolph was, under the circumstances, not only eminently just and. equitable, but valid and binding in law, admits of no doubt whatever. An unexpected obstacle had been discovered, greatly 'increasing the expense of the work, which was not within the knowledge or contemplation of either party when the contract was entered into. The contractor, finding that the contract price must prove wholly inadequate on account of this hidden and wholly unforeseen obstacle, quitted the work and declined to proceed further without additional' compensation. It was under these circumstances that the new agreement, providing for the additional compensation, was made; and the law will uphold it. (Munroe v. Perkins, 9 Pick. 298; Lattimore v. Harsen, 14 Johns. 330; Hart v. Lauman, 29 Barb. 410.) The new contract operated as a waiver of the obligations imposed upon the *219 contractor by the first contract. When he refused to proceed under the first contract, it was optional with the defendant either to prosecute him for non-performance or waive that right and make a new agreement on a more just and equitable basis. The defendant wisely, as I think, chose the latter. It is not true, as the plaintiffs' counsel insists, that the defendant was bound to pursue the contractor for a breach, and exhaust the legal remedy in that direction before a new assessment could be made. The court will not put a construction so unreasonable upon the power granted in the charter as to compel the defendant to do injustice to its employees and act oppressively. The additional compensation agreed upon was in no sense a gratuity, but strictly a compensation, and as such it was inadequate, as the judge expressly finds. That the defendant, through the common council, had power to abrogate, waive or modify the contract after it was entered into, or make an entirely new one, for the purpose of securing the completion of the improvement, can scarcely admit of a question. The defendant being a party competent to enter into1 a contract for such a purpose, has necessarily full power over the contract to cancel, alter or waive its provisions, as circumstances may require, to effect the end in view, unless its powers are limited and restricted in those particulars. There is no pretense that they are thus limited and restricted by any terms in the charter. The power to cause such improvements to be made, and to order the necessary assessments to defray the expense of making them, is full and ample, and it has been exercised for that purpose and no other in the present case. The second assessment was,- therefore, equally valid with the first, and the judgment of the general term, reversing the judgment, should be affirmed,
Mtjllin, J., also read an opinion in favor of affirmance. All the other judges concurring, Judgment affirmed.