Per Curiam.
Order affirmed, with costs, upon opinion of Martin, J., at special term.
The following is the opinion of Martin, J., in which the facts sufficiently appear:
Martin, J.
This was a motion for a new trial made by the defendant on case and exceptions. So far as the questions involved are concerned, the action was to recover the contract price for the excavation of a quantity of solid rock. The services in question were performed under a written contract between the parties for the construction of a portion of a railroad. By the terms of the contract the plain was to receive ninety cents per cubic yard for the excavation of solid rock. That the plaintiff excavated 15,429 yards is not disputed. That he has been paid for only 12,580 yards is admitted. It was for the difference, 2,849 yards, that the plaintiff sought to recover.
On the trial it was claimed by the defendant that the solid rock in dispute was excavated from a point back of *604 the line laid out by the chief engineer of the railway company, and contrary to his instructions. That the excavation of such rock was not only unnecessary and of no benefit to the company, but was an injury to the work. The plaintiff, however, insisted that he excavated only to, or substantially to, such line, and that he substantially complied with the instructions of the engineer. This question was submitted to the jury, who found for the plaintiff.
The contract between the parties contained the following provisions: “ Now, therefore, in consideration of the premises, this agreement further witnesseth, that the said party of the first part hereby agrees with the said E. G-. Gay, party of the second part, that they will pay, or cause to be paid, in lawful money, to the party of the second part, * * * for all materials furnished and delivered, and for all work done under this contract, the prices named in the annexed proposal, signed by the party of the second part, and forming a part of this contract, to be made in the following manner; that is to say: On or about the 10th of each and every month, during the progress of the work, an estimate will be made of all materials delivered and of work done during the preceding calendar month, with its amounts, at the prices named in the annexed proposal, with any extra work done, estimated as hereinbefore provided for, ninety per cent, of which monthly estimate shall be paid to the party of the second part within ten days thereafter. * * * When the work under this contract is completed to the satisfaction of the party of the first part, and the acceptance of the chief engineer of the said railway, there shall be a final estimate made of all materials delivered, and .all the work done agreeably to the terms of this agreement, to be made up from the estimates of said chief engineer as to quantities on the sections included in this contract, to which are to be fixed the prices named in the annexed proposal, to ascertain the amount due on the final estimate, less the sum paid on the monthly estimates, when the balance appearing to be due to said party of the second part shall be paid to said E. G. Gay, * * * And it is further agreed that the decision of the chief engineer of the said railway shall be final and conclusive in any difference or disputes which may arise between the parties to this agreement, relative to, or touching the same, and each and every of said parties do hereby waive any right of action, suit, or suits, or other remedy in law, or otherwise, by virtue of said covenants, so that the decision of, shall, in the nature of the award, be final and conclusive on the rights and claims of the said parties.”
Here were two separate and independent provisions; one providing the manner of payment as the work progressed, *605 and also the manner of determining the sum the plaintiff was to_ receive on the completion of his work; the other, providing that the decision of the chief engineer as to any difference between the parties should be final.
That the last provision is void must be admitted, as it is well settled in this state that a general covenant to submit any differences that may arise in the performance of a contract, or under an executory agreement, is a nullity. Haggard v. Morgan, 5 N. Y., 422; Hurst v. Litchfield, 39 id., 377; Hart v. Lauman, 29 Barb., 410; D. & H. Canal Co. v. Pa. Coal Co., 50 N. Y., 250.
But, as these provisions are separate and independent, the invalidity of the latter does not affect the validity or force to be given to the former. Where a contract contains some provisions which are void, but embraces other independent agreements which are valid, the latter may be enforced. Jarvis v. Peck, 10. Paige, 119; Leavitt v. Blatchford, 5 Barb., 10; Leavitt v. Palmer, 3 N. Y., 19; Curtis v. Leavitt, 15 id., 123; Senderson v. Goodrich, 46 Barb., 617; Arnot v. P. & E. Coal Co., 2 Hun 591-S. C. 68 N. Y., 558.
This leads us to consider the rights of the parties under the provision of the contract first above set forth. So far as the question involved is concerned, it provides that when the work shall be completed and accepted, a final estimate shall be made of all the materials delivered and work performed agreeably to the terms of the contract, to he made up from the estimates of the chief engineer as to quantities, to which the prices named in the plaintiff’s proposals were to be fixed, to ascertain the amount due upon the completion of the work. Thus the parties expressly agreed to adopt the estimate of the chief engineer as the basis for determining the amount of the final payment to the plaintiff. Such is the effect of the contract, and such was doubtless the intent of the parties. The situation and relation of the parties, the circumstances and the nature of the transaction all tend to show that such was the intent. The defendant was a contractor with the railroad company for the construction of several miles of its railway. The plaintiff made a sub-contract with the defendant to perform only a small portion of such work. The defendant could only recover from the company for such quantities of labor and material as were included in the final estimate of its chief engineer. Hence it was, that in making this contract, the defendant required the plaintiff to adopt the same basis for the determination of the quantities of his work and material that the defendant by his contract with the railroad company was required to adopt.
That such a contract when fairly entered into is valid .and binding upon the parties to it is well established. In *606 McMahon v. N. Y. and E. R. R. Co. (20 N. Y., 467), where the amount of the work was to be determined by the engineer of the defendant, it was held that such a provision was free from any legal objection, and obligatory upon the parties. In Wangler v. Swift (90 N. Y., 38), where the defendant agreed to pay such sum as should appear due for work and materials under a certificate from the engineer in charge of said work, it was held that the agreement was valid. See also Smith v. Briggs, 3 Den., 73; Smith v. Brady, 17 N. Y., 173, 176; Wyckoff v. Meyers, 44 id., 145; Hoffman v. Gallaher, 6 Daly, 42; D. and H. Canal Co. v. Pa. Coal Co., supra; Gibbs v. Continental Ins. Co., 13 Hun, 611, 614; Whiteman v. Mayor of New York, 21 id., 117, 120.
Assuming, then, that there was a valid contract between the parties whereby the defendant agreed to pay the plaintiff only for such quantities of work and material as were included in the estimates of the chief engineer, and it must, I think, be held to preclude the plaintiff’s recovery for any other or additional amount, unless there was fraud or bad faith in making such estimates, or unless the plaintiff was entitled to notice and an opportunity to be present when such estimates or measurements for them were made, and the omission of such notice gave such right.
The estimates and measurement of the work in question were made in the first instance by the assistant engineer in charge of the work. He made the quantity as claimed by the plaintiff. The nfext assistant above him, however, upon receiving such measurements and estimates, made the deduction complained of. This deduction was made upon the ground that the quantity deducted was unnecessarily and improperly taken out back of the line as the same was established by the engineer; that it was not taken out in accordance with the requirements of the engineer, but contrary to his directions; and was, therefore, not only of no value, but an actual injury to the work. That such grounds in fact éxisted was proved by the defendant, but contradicted by the plaintiff. The chief engineer adopted the deduction made by his subordinate, and his final estimate was made accordingly.
It may be that the evidence was sufficient to have justified the submission to the juiy of the question whether the engineer was guilty of fraud, or acted in bad faith, in making such deduction. That question was not, however, submitted to them. The court, when requested, declined to do so. If there was evidence tending to establish bad faith, it presented a question of fact for the jury, and not a question of law for the court; and hence the court erred in not submitting the question to them. The recovery- in *607 this case cannot, therefore, be sustained on the ground that the chief engineer was guilty of fraud or bad faith ill making up his estimates.
This leads us to inquire whether the plaintiff was entitled to notice and to an opportunity to be present when the measurements for the estimate were made, and if so, as to the effect of the omission to give such notice.
In the McMahon case (supra), where under a contract for the construction of a railroad by which the measurements were to be made and the amount of labor determined by the employer’s engineer, whose decision was to be final, it was held that the contractor was entitled to notice, and was not concluded by measurements made ex parte. See, also, Collins v. Vanderbilt, 8 Bosw., 313, 320; Dustan v. McAndrew, 10 id., 130; S. C., 44 N. Y., 72.
' On the trial, I was of the opinion that the decision in the McMahon case was an authority which justified me in holding that the plaintiff could recover upon other evidence than the estimate of the chief engineer, because such estimate was made in the plaintiff’s absence, and without notice or an opportunity to be present when the measurements therefor were made.
It now seems to me that that case is clearly distinguishable from the case at bar, and that it establishes a doctrine which is fatal to the plaintiff’s right of recovery when based on the sole ground of want of notice.
If it were to be conceded that notice was necessary to make such estimate binding upon the plaintiff (which I do not decide), still, as the estimate of the chief engineer is made by the contract the basis for determining the quantities of labor performed under it, the procurement of a proper estimate was a condition precedent to the plaintiff’s right of recovery, and he cannot recover without such estimate until he has established some sufficient excuse for not having procured it.
In the McMahon case, the employer was requested to have another measurement made, or to have those already made reviewed, which was refused, and the court held that although a final estimate by the engineer was a condition precedent to the payment, yet the employer having refused to remeasure the work, or review the estimates, the plaintiff might recover upon other evidence of the amount of the work.
In discussing that branch of the case, the court says: “This conclusion alone (that an ex parte estimate would not bind the plaintiff) without some excuse on the part of the plaintiff for not having procured a proper final estimate to be made would not support the decision of the referee. But such an excuse is afforded by the latter part of the *608 paragraph in the statement of facts already cited, which states that the defendants were requested to have estimates, measurements, etc., made, and that they refused. It is 'to he inferred, undoubtedly, from this statement that the request was made by the plaintiff or his assignor, the original contractor. This was all, I think, that it was incumbent upon the contractor to do.. The engineer was entirely under the control of the company, subject to its order, and moved by its will, and after the company had absolutely refused to direct him to make an estimate or revise what he had already made, it would have been useless for the contractor-to apply to him, and I think he was under no obligation to do so.”
The recovery in that case was sustained only upon the ground of the defendant’s refusal to permit its chief engineer to remeasure the work or review his' estimates. That was held to be a sufficient excuse for not procuring a proper estimate.
In the case at bar there was no such demand and refusal. The plaintiff asked that the chief engineer review his estimates, and he did so.
It seems to me that within the principle of the case cited it must be held that the procurement of a proper estimate was a condition precedent to the plaintiff’s right of recovery; that there was in this case no such demand and refusal to make a proper estimate as was requisite to excuse the plaintiff’s omission to procure it, and that no other sufficient excuse for not having procured it was established.
I am, therefore, of the opinion that the court erred in holding that the proof of want of notice to the plaintiff was alone sufficient to justify a recovery in this action •upon other evidence than the estimate of the chief engineer, and that upon the evidence in the case the court should have non-suited the plaintiff, or directed a verdict for the defendant, unless the evidence was sufficient to have authorized the submission to the jury of the question whether the chief engineer was guilty of bad faith in making his estimates, and if so, then the court erred in not submitting that question to the jury. For this error, a new trial should be granted, with costs to abide the event.