John Bates *vs.* James Wiles.

---

In Special Term — STORER, J. presiding.

---

### JOHN BATES *vs.* JAMES WILES.

Where stocks are transferred as collateral security, with a power to the creditor to sell the same at private sale, or at auction, he may, when the debt becomes due, dispose of the same, after demand of payment and notice of the time and place of sale to the debtor.

The sale must be conducted in perfect good faith; the bailee is the trustee of the bailor, and his conduct will be carefully examined by the Court. If the sale has not been made in the usual mode, but at short notice, or without notice to the debtor, it will be declared invalid.

A mortgage of personal property transfers the legal title to the mortgagee: the mortgagor holding the possession by the consent of the mortgagee only, who may at any time reclaim it, unless there is an agreement to the contrary.

John Bates *vs.* James Wiles.

The transfer of property as a pledge does not convey the legal title; that is still held by the owner; a lien accompanied by possession is the only right vested in the creditor.

The measure of damages, when stocks are sold without demand and notice, will be their highest market value, at any time between the day of sale and the commencement of the suit.

STORER, J.

This case is submitted for the decision of the Court on the following facts:

The defendant borrowed of the plaintiff $5,000, and gave his note dated 15th September, 1853, at one year for the amount; at the same time he deposited with the plaintiff as security, certificates for two hundred shares of stock in the Cincinnati and Western Railroad, authorizing the creditor to dispose of the stock at private sale or at auction, whenever the credit expired, appropriating the proceeds of such sale first to the payment of the note, and the balance, if any should then remain, to be returned to the debtor.

On the 23d November, 1854, the creditor sold the stock at auction, without having demanded payment of the debtor, or notified him of the the time and place of sale. The amount realized from the sale was $1065, which is credited on the note.

It is claimed in the defendant's answer, that the price at which the stocks were sold, was less than their real value, and that before this suit was brought, the value thereof had risen in market. It is further claimed that the sale was invalid, and any such increase in value should now be allowed as an additional credit upon the note.

The only question necessary to be decided is, what were the duties imposed upon the creditor, by the deposit

of the stock; and what must he have done before the sale, to protect himself from responsibility to the debtor?

By the pledge of the stock, the legal title was not transferred to the creditor. He held a lien only accompanied by his possession. He was bound to keep the property safely, and to deliver it to the debtor, whenever the debt and interest were tendered; and the specific chattil must then be surrendered, not another of the same kind, or its equivalent. In this a pledge differs from a mortgage of chattels; in the latter case, the legal title is conveyed by the mortgagor by the instrument of mortgage, and the possession is only retained by the mortgagor at the will of the mortgagee, unless there is some stipulation to the contrary. Hence the mortgagee may resume the possession of the thing mortgaged, at any time, and even when he has agreed to permit the mortgagor to retain it, may still exercise his right to reclaim, if the mortgagor is doing any act inconsistent with the mortgagee's paramount right, or that may impair or destroy it. 2 *Spence's Eq. Jur.* 771; *Story on Bailments,* § 346; 1 *Ves.* 278, Kemp *vs.* Westbrook; 2 *Caines' Cases in Error* 201; Costilgan *vs.* Lansing, 12 *Johns.* 145; Garlick *vs.* Jones, 4 *Denio* 231; Stearns *vs.* Marsh, 2 *Hilliard on Mortgages* 241; Hele *vs.* Suonhill, 2 *Green* 8; Alden *vs.* Lincoln, 13 *Met.* 204.

There is another material distinction between a mortgage and a pledge. The mortgagee holding the legal title, need not have the actual possession; but the pledgee without possession has no right to assert. When the mortgagee sells the chattel, he imparts the title in virtue of the estate conveyed to him, not because the mortgage is forfeited by the non-payment of the debt; but the right

to sell the pledge exists only in the creditor, when he takes the proper measures to assert his lien. *Story on Bailments*, §§ 287, 29, 297; 1 *Powell on Mortgages* 3; 2 *Kent's Comm.* 577; 2 *Comstock* 443, Wilson *vs.* Little; 8 *Barbour* 493, Brownell *vs.* Hawkins.

There must then be a legal sale of the pledge, before the debtor's title is divested and the creditor protected in the execution of the trust.

Formerly no sale of a pledge was permitted by the Courts, unless it was a judicial one. *Story on Bailments*, §§ 308, 346. Although it is now understood to be the law that after the debtor is in default, the creditor may sell, it is still held by the French Code, as well as that of Louisiana, that no other disposition of property should be allowed. *Code Napoleon*, "Du Gage," Art. 2078. *Civil Code of Louisiana*, Art. 3132.

It is settled that the pawnee has his election of remedies on the pledge, either to file his bill to foreclose, or sell without judicial process after notice to the debtor to redeem. 2 *Kent's Comm.* 582; 4 *Denio* 229, 230, Stearns *vs.* Marsh; 1 *P. Wms.* 261, Tucker *vs.* Wilson; 2 *Atkyns* 303, Lockwood *vs.* Ewer.

Whenever the debtor is without the jurisdiction of the Court, and cannot be personally notified, the creditor should file his bill to sell the pledge. 2 *Story Eq.* § 1008–1009; *Story on Bailments* § 308; 12 *Johns.* 150, Garlick *vs.* Jones.

When the creditor undertakes to sell, without a judicial order, he must demand payment of his debtor, and notify him personally of the time and place of sale. This rule is strictly enforced, and the Courts will carefully guard the rights of the debtor. In the execution of his trust, the

creditor will be held to the highest degree of good faith, and every departure from established or ordinary usage, in the mode of sale, will be regarded with suspicion. So liberal is the law, that while the pledge is in being, and the right of sale has not been exercised by the creditor, the debtor may have his life time to redeem. 2 *Kent's Com.* 581; 2 *Johns. Chy.*, Hunt *vs.* Ten Eyck; 1 *Sandford S. C. R.* 351, Wilson *vs.* Little; 4 *Denio* 229, Stearns *vs.* Marsh.

If a sale should be made without demand and notice, the debtor may recover the value of the creditor, without even tendering the debt due, because by the wrongful act of sale, the creditor is incapacitated from returning the pledge, and it would be nugatory to make the tender. *Story on Bail.* § 349; *Johns.* 472, McLean *vs.* Walker.

We are satisfied that there could have been no legal sale of the stocks transferred by the debtor, in the present case, until the proper formalities had been observed. There should have been a demand of the debt, and notice given to the debtor of the time and place of sale, and every step, in the progress of the sale, should have been consistent with the most careful regard to the rights of the debtor.

As the sale was made without the observance of the forms we have indicated, the defendant has the right to claim the highest market value of the stocks between the day of the sale and the commencement of this action.

We are not prepared to adopt the rule, that the debtor may claim whatever may be the value of the stock at the trial. The English Courts are inclined, we admit, to allow it; and so of the New York Courts, on the ground that when the price is paid in advance, the vendor is entitled to the highest value at the time of trial. "The party in-

jured by the breach of contract, would then have the right to rescind, and should be restored to all that he has lost; but these Courts do not seem to have considered the question, which presents itself where the article falls in value after the price is paid." *Sedgwick on Damages* 273.

In Enders *vs.* Board of Public Works et al., 1 *Grattan* 365; Wells *vs.* Abernethy, 5 *Connecticut* 222–227; Smithurst *vs.* Woolston, 5 *Watts & Serg.* 106, we find a very distinct statement of what we believe to be the true principle. They all deny that there is any distinction between contracts for the sale of stock, and other personal property; and Chief Justice Hosmer, in Wells *vs.* Abernethy, says, "the reason of the ordinary rule is so simple and obvious, that it has been universally embraced, except in the case of stock contracts; whenever a case on this subject occurs, I shall be desirous of putting an end to the exception, without cause, by the establishment of perfect uniformity; as no just reason can be assigned for any discrimination."

We are satisfied with the rule thus established, and regard it as the safest, as it certainly is the most uniform, in its application to trade and commerce.

The plaintiff may take judgment accordingly.