## DABOVICH & CO. *v.* EMERIC.

In a contract for the sale of a certain number of shares of fruit growing on the trees of an orchard, owned in shares, where the vendor guaranteed to the vendee that the shares of fruit should be at his disposal on the trees, free from trouble and annoyance from other parties ; on breach of such contract, where no special damage is alleged, the measure of damage is the highest market price of the fruit on the trees at the orchard, if there is any market value for it there ; if not, then if the vendee is prepared to gather it and carry it to the market, the market value there, less the cost of gathering and carriage.

If other persons were in possession of the orchard when vendee went there to gather the fruit, and if those persons forbade him or his agents and servants from going

in and gathering the fruit purchased, and if the vendee could not have done so without risk of personal collision or violence, then the guarantee was broken, and though the vendee might have been permitted to gather a portion of the fruit bought, but not all, he had a right to come away and hold the defendant responsible on the guarantee, as he was not bound to take a portion of his contract.

A jury cannot give compensation for loss of time, remuneration for wages paid, etc , unless there is an allegation in the complaint as to these matters.

APPEAL from the Fourth District, County of San Francisco.

This was an action in the Court below for a breach of contract. The plaintiffs, who are fruit dealers in San Francisco, purchased of the defendant, for the sum of four hundred dollars, sixteen-fortieths of the pears growing in a certain orchard.   After such sale, the defendant, for the consideration of fifty dollars, executed the following guaranty :

" Having this day sold to Messrs. Nicholas Dabovich & Co. three shares and one-fifth of one share of the pears standing on the trees of the orchard of San Pablo, which orchard is divided into eight shares, I hereby guarantee to. Nicholas Dabovich & Co. that the said three shares and one-fifth of one share will be at their disposal on the trees, free of trouble or annoyance from other parties to them.

                                              " JOSEPH EMERIC.
" San Francisco, June 14, 1856."

The plaintiffs alleged a demand and refusal on the part of the defendant.   To this complaint there was a demurrer, which was over-ruled, and a judgment for the plaintiffs.

From this judgment the defendant appealed to this Court, and at the January Term, 1857, (see 7 Cal. Rep. 209,) this Court reversed the judgment of the Court below, and remanded the cause with leave to the plaintiff to amend his complaint.

On the remanding of the case, the plaintiffs amended their complaint.   The pleading set out the contract in its words, and averred for a breach of it, that the plaintiffs went to the orchard to gather the pears from the trees on which they were, and that the plaintiffs were then and there troubled and annoyed, and were by force, and arms,

and threats of violence, ejected from the orchard, and hindered and prevented from gathering the pears ; that the defendant was duly notified of this hindrance ; that the defendant utterly refused and neglected to deliver the pears to the plaintiffs, or place the same at the disposal of the plaintiffs, according to the terms of the contract, free from annoyance or trouble ; and avers damages to the amount of $3,000. Issues were joined on this complaint, and the case was tried by a jury, under the directions of the Court.

The Court gave to the jury, at the request of the plaintiff, the following instructions :

1st. " That if the jury should find for plaintiff, then the measure of damages is the highest value or market price of the pears on the trees, since the first demand for the delivery of the same."

2d. " That in the estimate of damages, they shall also allow the loss of time, value of services, and wages caused by the failure of defendant to perform his contract."

3d. " That the contract and guarantee was entire, and the plaintiffs had the right to refuse to receive a portion of the fruit without the whole."

The defendant requested the Court to give to the jury six written instructions, all of which were refused. The first three are in effect, that the guaranty or indemnity of the defendant extended only to the acts of himself or others interested in the property, and not against the acts of strangers.

The fourth and fifth instructions are in substance that the true rule of damages in the case was, that if the plaintiffs were molested or annoyed in gathering some of the pears, but not all of them, then they could only recover for the value of the pears on the trees, as to such portions to which the molestation and annoyance extended.

The sixth instruction is as follows : " That to enable plaintiffs to recover at all, the evidence must satisfy the jury that the plaintiffs were so far annoyed or molested in gathering the pears thus bought, that further persistence on their part to gather them would have been repelled by force, or have led to a breach of the peace."

Plaintiffs had verdict and judgment. Defendant moved the Court for a new trial, which was denied, and he appealed to this Court.

*Sloan & Hartman* for Appellant.

The Court erred in giving plaintiffs' instructions to the jury.

I.   The first part of the first instruction, as to the measure of damages, is probably correct, disconnected with the latter part of the instruction as to the demand and refusal. The instruction, as it stands, proceeds upon the hypothesis that a demand and refusal is necessary to fix a liability. The Supreme Court has already decided in the case that a demand and refusal was no breach of contract; yet in the very outset we find this same thing clinging, like the shirt of Nessus, to the plaintiffs' case.

The second instruction is clearly erroneous. It is instructing the jury to give special damages. No claim for special damages is claimed in the amended complaint; and certainly plaintiffs cannot recover more than they claim. The only damages claimed were for the value of the pears; yet here we have the Court instructing the jury that, in addition to that they shall also allow for loss of time, value of services, and wages!

The third instruction is clearly erroneous, and tended to the injury of the defendant on the trial there can be no question. From the testimony of nearly every witness examined, it appears that the plaintiffs might have received a portion, if not all their fruit, had they seen proper so to do. A portion, at least, was at their disposal, even had they been troubled and molested in procuring the balance. The instrument in question, given by the defendant to the plaintiffs, and which is the basis of the action, is precisely what it purports to be, and nothing more or less, to wit, a guaranteeing or indemnifying instrument, and intended to make plaintiffs whole as to such part of the fruit as they should not be able to procure without trouble or molestation. If they could not procure a portion of the fruit, for that portion the defendant was bound to indemnify them, and no more. If they could not procure any, then the defendant was bound to them for the whole.

II.   The Court erred in refusing to give to the jury the instructions prayed for by the defendant.

The first three of these instructions we shall examine together.

They are, in effect, that the guaranty or indemnity of the defendant extended only to the acts of himself or others interested in the property, and not against the acts of strangers. In other words, that the instrument did not guarantee against wrongful acts or trespasses of all the world, but against the trouble and annoyance only of such parties as had an interest or title, paramount, or otherwise, in the property. This is apparent from the instrument itself, as well as from analogous principles.

The covenant in the instrument at bar is similar to the covenant in a deed for quiet enjoyment. In fact, a covenant against trouble and annoyance is nothing more or less than a covenant for quiet enjoyment. Rawle on Covenants for Title, p. 147; Greenby v. Wilcox, 2 J. R., p. 1; Folliard v. Wallace, 2 J. R., p. 402; Kent v. Welch, 7 J. R., p. 258; Walter v. Hele, 2 Saund. 180. n. 10.

The correctness or incorrectness of the refusal to give the sixth instruction depends upon a simple proposition — did the sale in the case pass the defendant's title in the property to plaintiffs? If so, then the plaintiffs had the right to reduce their property to possession; and if they found their property in the possession of a wrongdoer, who was disposed to hold it by force, then they had a right to use force against force. The instruction prayed for did not even go to this extent, and we submit that it was error in the Court to refuse it.

*P. L. Edwards* for Respondents.

I. There was no error in the first instruction prayed for by the respondents. That this instruction announces the true rule of damages in the case, is shown by Sedgwick on the Measure of Damages, 258, *et seq.*

If this instruction assumed that a demand for the pears, and a refusal to deliver, was necessary to give a cause of action to the respondents, as intimated by the appellant, then there may be error in the record, but not such as he can assign; for it was against the respondents.

The contract of sale was, exactly speaking, precedent to that of the guaranty, but in legal effect they were cotemporaneous acts. Perhaps in the view of the counsel, it would have been more accurate

to have instructed the jury to give the highest market price after the sale ; but surely this is not an error of which the appellant can complain ; for if the two acts were not cotemporaneous, that of the sale was first in time, and thus the instruction might have prejudiced the respondents, while it was impossible that it could prejudice the appellant.    See particularly, Baldwin v. Burnett, 4 Cal. 392.

II.    The second instruction is said to be " clearly erroneous "; and we as earnestly think it clearly correct.    The guaranty was that the pears should be at the disposal of the respondents on the trees, " free of trouble or annoyance from other parties."    Any damages which might ordinarily, and did result from the breach, ought to be allowed ; and such damages ought to be given under the general averment of damages.    As we understand' the learned counsel, the objection does not go so much to the damages themselves as to their being given under the state of pleadings in this case.    In all this we think the counsel are wrong.    The record does show such averments, perhaps not so technical or artistic as such averments should be made, but still sufficient for all purposes after verdict.    Such damages are clearly allowable.    Kenyon v. Goodall, 3 Cal. 257.

III.    The third instruction given is said to be clearly erroneous. Now, the fair presumption is, that the purchasers had in view their general business as fruit dealers, as well as certain particular contracts which they had assumed to perform, all of which would have been accommodated by their getting the whole of the fruit, while a small part of it would have been valueless and even prejudicial to them ! And yet it is gravely argued that the respondents ought to have taken just so much as the caprice or interest of the appellant would allow. In other words, they were obliged to receive just so much as was to the advantage of the appellant, although at their sacrifice, while he was permitted to retain as much as would have been to their advantage.    Such a view of the instrument is too absurd to be tolerated ! The respondents had the right to treat the contract as entire, and they did so.

IV.    The first three instructions prayed by the appellant are considered together.    They are to the effect that the guaranty of the appellant " extended only to the acts of himself or others interested

Dabovich & Co. v. Emeric.

in the property, and not as against the acts of strangers.   In other words, that the instrument did not guarantee against the wrongful acts or trespasses of all the world," etc.   The guaranty thus restricted in its import would be worse than idle, and valueless.   The seller of a chattel is always bound upon his implied warranty of title.   By the mere force of law, there was already an undertaking of the effect now ascribed to the guaranty.   The respondents had already paid the four hundred dollars, and the property, as held by the Court, had already vested in them ; but they were doubtful of the appellant's ability to perform, and anxious for further assurance against the interference of other persons, and therefore gave the additional fifty dollars for the guaranty which  expressly provided that the fruit should be on the trees and at the disposal of the respondents " free of trouble or annoyance from other parties."   If not intended to indemnify against the acts of strangers, for what purpose was it intended ?   From all the circumstances characterizing the transaction, as well as the natural and obvious import of the terms, it is difficult even to imagine that anything other than the interference of strangers was intended to be provided against.   There was in fact nothing else necessary to the safety of the respondents.

We submit that the error of the counsel for the appellant consists mainly in their considering the guaranty " as similar to a covenant for quiet enjoyment."   It is said that it would be unreasonable that a man should covenant against the tortious acts of strangers which he could not foresee or prevent," etc.   Now, the simple answer to all this is, that there is no sort of analogy between a covenant for quiet enjoyment of real estate and that now under review.   The purchasers were never permitted to take the possession, so that there is wanting the very first fact to warrant the assertion of the supposed analogy. There was a constructive possession in respondents by virtue of the sale ; but that does not relieve the appellant here ; for the respondents were to have the pears on the trees at their disposal, " free of trouble or annoyance from other parties ; " but the fruit was not at their disposal, nor free of trouble or annoyance of other parties. There was, therefore, a breach of the guaranty.

Sedgwick on the Measure of Damages, already cited, will through-

out show the dissimilarity between personal and real contracts as to the right and remedy.

V.   The fifth instruction prayed by the appellant but raises again in a form little varied the question as to the entirety of the contract, and has been sufficiently considered.

VI.   The sixth instruction.   It is an anomalous doctrine that after a man has paid his money for property, and taken an express guaranty that it shall be at his disposal " free of trouble or annoyance of other parties," he must fight, or at least hazard a fight for it before he can have any remedy over !   The appellant had contracted to guard against the interference of others, and cannot now transfer the burden which he was paid for assuming, to those who paid him.

BALDWIN, J., delivered the opinion of the Court—TERRY, C. J., concurring.

This controversy, which has been going on a long time, and been heretofore before this Court, grew out of a contract in these words :

" Having this day sold to Messrs. Dabovich & Co. three shares and one-fifth of one share of the pears standing on the trees of the orchard of San Pablo, which orchard is divided into eight shares, I hereby guarantee to said Nicholas Dabovich & Co., that the said three shares and one-fifth of one share of said pears will be at their disposal on the trees, free from trouble and annoyance from other parties to them.

" (Signed,)          JOS. EMERIC.

" June 14th, 1856."

When the case was before this Court (January T., 1858) this contract was construed.   They say, " from the very nature of the first contract of sale, the delivery took place as soon as the sale was made.   So far as the sale was concerned, they became the owners of the fruit upon the trees, and could only maintain an action against the defendant in case he converted the property or interfered with them in picking it.   As to the guarantee, its effect was simply that the pears should be on the trees at the disposal of the plaintiffs, and that they should not be disturbed in their right to gather them by third persons.   To recover on this contract, it was necessary to allege and

prove either that the fruit was not on the trees, or that the plaintiffs had been interfered with by third parties gathering it.    There was no necessity for any demand upon the defendant unless for the purpose of enabling him to comply with the terms of his guarantee."

This opinion was given on appeal from the Superior Court of San Francisco after the first trial, which resulted in verdict and judgment for the plaintiffs.

On the remanding of the case, the plaintiffs amended their complaint.    This pleading set out the contract in its words, and averred for a breach of it, that the plaintiffs went to the orchard to gather the pears from the trees on which they were, and that the plaintiffs were then and there troubled and annoyed, and were by force, and arms, and threats of violence, ejected from the orchard, and hindered and prevented from gathering the pears; that the defendant was duly notified of this hindrance ; that the defendant utterly refused and neglected to deliver the pears to the plaintiffs, or place the same at the disposal of the plaintiffs, according to the terms of the contract, free from annoyance or trouble ; and avers damages to the amount of $3,000.    Issues were joined on this complaint, and the case was tried by jury under the directions of the Court.    Sundry instructions were given and refused.    These form the main subject of review here.

It has been seen that the complaint does not aver any causes of special damages.    Only such damages, then, as were the natural and necessary consequence of the breach of the agreement can be recovered.    The whole guarantee, as we understand it, amounts to this : that the defendant owned a certain portion of the pears growing or hanging on the trees of the orchard ; this proportion was sold to plaintiffs, with a right to go and gather them, and the defendant warranted that the plaintiffs should not be disturbed or hindered in getting them. The plaintiffs wanted no trouble, difficulty or law suits about the matter, and the defendant insured them against this.    An opposition by force, or the appearance of it, authorized the plaintiffs to desist from going on the premises, or prosecuting their errand in gathering or attempting to gather the fruit ; and this opposition gave the plaintiffs a right of action.    The measure of damages was the injury done, which was the loss of the pears.    The value of these was the standard of

recovery.   If there was no ascertained fixed value of the pears grow-
ing or on the trees at the orchard, the market value at San Francisco,
less the cost of gathering and carriage, would furnish the rule of value.

The plaintiffs were not bound to take less than all of what they pur-
chased.   The defendant had no right to change the terms of the con-
tract ; the plaintiffs had a right to the contract as they made it.   Even
in cases of the sales of several articles by one contract for a sum in
gross, the vendee is not bound to take a portion, but may rescind the
contract if all are not delivered.   This was in effect a sale of all the
defendant's share of this fruit, and guarantee of uninterrupted access
to all, and liberty to take all.   The plaintiffs were not bound to take a
part, when they were hindered from getting the rest.   We cannot
apportion the contract in this way ; for the main inducement to the
contract may have been to obtain the whole quantity of the fruit con-
tracted for.

The contract did not merely provide against interruption from the
parties having an interest in the orchard, but the guarantee is general,
including interruption from every quarter.

Inasmuch as no claim was made in the complaint for loss of time,
wages, etc., no recovery could be had on this account, and the Court
erred in instructing the jury in this respect.

We think there was no error in the first instruction.   Considering
this contract to be in effect an agreement for the delivery of these
pears, or, what amounts substantially to the same thing, a sale of them
with a guarantee of peaceable and uninterrupted possession, the plaint-
iffs having paid the price in cash, were entitled to recover as the meas-
ure of damages for a breach of the agreement the highest market price
of the pears on the trees, from the time of the delivery to the time of
trial, if suit were not unreasonably delayed.   Sedg. on Damages,
page 264.

The principles upon which this protracted case may be finally dis-
posed of have been given.   To prevent misapprehension we repeat them.

If other persons were in possession of the orchard when plaintiffs
went there to gather the fruit, and if those persons forbade the plaint-
iffs, or their agents and servants, from going in and gathering the fruit
purchased, and if the plaintiffs could not have done so without risk of

personal collision or violence, then the guarantee was broken ; and though the plaintiffs might have been permitted to gather a portion of the fruit bought, but not all, they had a right to come away and hold the defendant responsible on the guarantee.

The measure of damages in that event would be the highest market price of the fruit on the trees at the orchard, if there was any market value for it there, and as it was ; if not, then if the plaintiffs were prepared to gather it and carry it to the market, the market value there, less the cost of gathering and carriage, would be the criterion of recovery.

But under the complaint the jury could not give compensation for any loss of time, remuneration for wages paid, etc., as there is no allegation in the complaint as to these matters.

The judgment is reversed and case remanded.