SAMUEL FOSDICK, Plaintiff in Error, *v.* WILLIAM GREEN, Defendant in Error.

G., owning shares of Marietta and Cincinnati Railroad stock in 1856, transferred the same to F., who gave receipts substantially as follows: "Borrowed of Wm. Green, 109 shares M. and C. stock, returnable on demand, with interest at the rate of eight per cent."

In 1860, a mortgage was foreclosed and the entire railroad property was sold at judicial sale, and a special act passed, ratifying the sale and affirming the title and franchise of the purchasers, who were trustees appointed by and acting for the creditors. The same year a reorganiza-

tion was effected, and to it, as "The Marietta and Cincinnati Railroad as reorganized," the trustees conveyed by deed. Subsequently, under the act of April 4, 1863, another deed was executed from the "Marietta and Cincinnati Railroad Company" to the "Marietta and Cincinnati Railroad Company as reorganized," thereby vesting it with the franchise, property, and rights of the old corporation, at which time the stock of the Marietta and Cincinnati Railroad Company had no market value.

In suit by· G., to recover from F. the value of the stock transferred:

*Held,* that the sale of the road and franchises, together with the subsequent proceedings, acted as a complete extinguishment, for all practical purposes, of the Marietta and Cincinnati Railroad stock.

That the stock having no existence when this suit was brought, no demand for its return and refusal was necessary, and the bringing of this action was a sufficient demand.

That the transactions between the parties were, in fact, sales, and the vendee was bound to compensation; and, the risk of the contracts being upon him, under the circumstances, that the measure of damages was the market value of the stock at the time of the loan, in 1856.

Writ of error to Special Term, to reverse a judgment there in favor of the plaintiff below.

William Green was the plaintiff below, and filed his petition on January 16, 1869, setting forth two causes of action, as follows:

*First.* The plaintiff alleged that he owned 109 shares, of $50 each, of the capital stock of the Marietta and Cincinnati Railroad Company, a body corporate under the laws of Ohio, and that said shares bore interest at the rate of eight per cent. per annum, and said shares, with the interest accrued thereon, were worth, on January 1, 1856, the sum of $3,084.50. That the said Green, on that date, at the special instance and request of the defendant, Samuel Fosdick, lent and fully transferred the said shares to the said defendant, who then and there promised and agreed to return said stock to the plaintiff, when requested, with interest, of which promise and agreement the following is a copy, viz:

"Borrowed of William Green, Esq., one hundred and nine shares ($5,450) of the capital stock of the Marietta

and Cincinnati Railroad Company, returnable on demand, with interest on said stock at the rate of eight per cent. per annum, from the 1st of February last.

(Signed,) "SAM'L FOSDICK."

" *June* 1, 1856."

On which agreement was the following memorandum, written by defendant, viz:

"109 S.—$5,450.00
111 S.— 5,550.00
$11,000.00
293.33, four months' int. at 8 per cent.
25.94, marginal interest.
$11,319.27, or $6,225.60."

Plaintiff further averred, that the defendant had not returned said stock, and that in the year 1860 the said Marietta and Cincinnati Railroad Company transferred their said railroad, and all their property and means, to another and different company, and said corporation was surrendered and dissolved, and all the capital stock thereof became and was wholly extinguished, all of which was well known to the defendant; and that afterward, on the —— day of October, 1868, he duly requested the defendant to perform his said promise and agreement, and pay the plaintiff the value of his said stock and interest, as above stated, with interest; but the defendant wholly refused to do so, whereby the plaintiff has wholly lost the said stock and the value thereof.

The second cause of action was in the same form as the first, but was on a separate agreement, as follows, viz:

"Borrowed of William Green, Esq., certificates for one hundred and eleven shares of Marietta and Cincinnati Railway stock, drawing interest at eight per cent., from Febru-

ary 1, 1856, marginal interest, $25.94, to be returned on demand.    (Signed,)    SAM'L FOSDICK."
"*January* 12, 1857."

"111 Shares, . . . . . . . . $5,500.00
    Int. from Feb. 1, 1857.
    Marg. int., . . . . . . . .    25.94."

The defendant answered as follows:

That on and from the 1st day of June, 1856, there had been issued by the said Marietta and Cincinnati Railroad Company a large amount of certificates of stock, signed by the treasurer and president of the company, certifying that a person or persons named therein were owners of a speci- fied number of shares in the capital stock of said company, transferable on the books thereof in person or by attorney, on the surrender of the certificate; that on the back of each certificate was printed a blank form of a power of attor- ney, and also a statement, signed by the secretary of the company, that "the within certificate is entitled to eight per cent. interest per annum in stock." The defendant further states, that it was usual and customary for those who had obtained from said company the said certificate of stock to sign said power of attorney, leaving blank (to be inserted thereafter) the name or names of the person or per- sons to act as attorney, which usage and custom was well understood and recognized by said company. And the de- fendant further states, that such certificates of stock, with the power of attorney so executed in blank, were, on and prior to the 1st of June, 1856, and subsequent thereto, in- cluding the 12th of January, 1857, bought and sold in the city of Cincinnati as and for the stock of said company.

The defendant further says, that he denies that the plaintiff was the owner, and lent and transferred to the de- fendant shares of stock in said Marietta and Cincinnati Railroad Company, otherwise than as holding and loaning and transferring by delivery to the defendant certificates of stock, with a power of attorney executed in blank, as

hereinbefore described. And the defendant states that the shares of stock mentioned in the two written agreements set out in the petition were such certificates of stock to the amount therein named, and the shares of stock to be returned to the plaintiff on demand were like certificates of stock to the same amount, and such additional amount as the interest, payable in stock, which might have accrued at the time of demand, would require. And the defendant states that the plaintiff has in no form or manner made demand upon him, the defendant, for the return of the shares of stock in said two written agreements mentioned, or of either of them.

The defendant, for further answer, denies the allegations in the said petition as to the surrender and dissolution of the said Marietta and Cincinnati Railroad Company, and the extinguishment of its capital stock.

The court found the plaintiff below entitled to a judgment for the market value (about sixteen cents on the dollar) of the stock mentioned in the two agreements at the time they bear date, with interest from that time at eight per cent., and rendered judgment for the sum of $3,816.73.

A motion for a new trial was made by both parties and overruled, and this action is prosecuted to reverse that judgment.

*Stallo & Kittredge*, for plaintiff in error:

I. No breach of the contract set forth in the petition occurred, whereon an action could be maintained, until a demand was made of Fosdick for the return of the stock named in the contracts. It is the demand and refusal which constitutes the breach of the contract and does the damage. *Lobdell* v. *Hopkins*, 5 Cowen, 516; *Vance* v. *Bloomer*, 20 Wend. 196; *Moore* v. *Hudson River R. R. Co.*, 12 Barb. 156; *Norman* v. *Isley*, 17 Wis. 314, and same case 21 Wis. 138; *Thrall* v. *Meade's Estate*, 40 Vt. 544; *Newman* v. *McGregor*, 5 Ohio, 349.

II. The measure of damages for a breach of the contract set forth in the petition is the value of the stock at the

time of the breach of the contracts, which, from the preceding proposition, was the time of such demand and refusal. *Chase* v. *Washburn*, 1 Ohio St. 244; *C. & P. R. R. Co.* v. *Kelly et al.*, 5 Ohio St. 180; *Robinson* v. *Noble*, 8 Peters, 181; *Eastern Railroad Co.* v. *Benedict*, 10 Gray, 212; *Smith* v. *Berry*, 6 Shepley, 122; *Bush et al.* v. *Canfield*, 2 Conn. 485; *Wells* v. *Abernathy*, 5 Conn. 222.

III. 1. The deed from Noah Wilson and others, purchasers at the receiver's sale, to the Marietta and Cincinnati Railroad Company as reorganized, is invalid for want of a competent grantee. *Sloan* v. *McConaly*, 4 Ohio, 157; *Jackson* v. *Corry*, 8 Johns. 386; *Jackson* v. *Hartwell*, 8 Johns. 422; *Hornbeck* v. *Westbrook*, 9 Johns. 73.

2. From the last proposition, the deed of the Marietta and Cincinnati Railroad Company to the " Marietta and Cincinnati Railroad Company as reorganized," is invalid, because the grantees do not fall within the persons defined in the act of 1863. S. & S. 131.

3. The deed purporting to have been made under this act is void, because the consent of two-thirds of the stockholders thereto is not shown.

4. The deed is void, as there is no proof that the condition of the proviso of said act was ever complied with. If it was not, the deed is void; if it was, the preservation of the old stock, as a thing of value, has been specially provided for, and it may be converted, under the proviso, into stock in the new corporation.

5. The act of 1863 is unconstitutional, because it is a special act conferring corporate powers, under sections 1 and 2 of the constitution of Ohio.

IV. In no case can the *damages* bear eight per cent. interest.

*King, Thompson & Avery*, and *Nicholas Longworth*, for defendant in error :

I. This loan was a *mutuum*, and in legal effect a sale, changing the property, throwing upon the borrower all the

risks attending its return and creating a debt. *Chase* v. *Washburn*, 1 Ohio St. 249. Demand of the stock was not necessary to the action. Demand of its value, as alleged in the petition, was sufficient.

II. The value at the time of the demand, or suit brought, is not the measure of damages in such a case. The rule is not general. It does not apply to stock contracts. *Bates* v. *Wiles*, 1 Handy, 532; and see 26 N. Y. 309; 31 N. Y. 676; 26 Penn. St. 143; 19 Conn. 212; 23 Ind. 1. Nor to real estate contracts. *Buck* v. *Waddle*, 1 Ohio, 357; and see 34 Penn. St. 418, and 35 Penn. St. 23, which are both directly against the decision in 5 Conn. 222, cited by plaintiff in error. Nor to contracts for merchandise when the price has been paid in advance. 3 Cowen, 82; 27 Barb. 424; 12 Cal. 171; 17 Cal. 415; 4 Texas, 289; 13 Texas, 324. Nor is it true that in an action upon a contract the original consideration can not be recovered. 15 Ohio, 123; 3 Jones' (N. C.) Law, 550; 2 Man., G. & S. 905.

III. But the rule claimed can not apply here, because at the time of demand no such stock was in existence. That is the peculiar and controlling feature of the case. That the stock of the Marietta and Cincinnati Railroad had become extinct is proved by the foreclosure and sale of their road and all its appurtenances, in 1860, to the new "Marietta and Cincinnati Railroad Company as reorganized," followed by the deed conveying its franchise and all its corporate rights and privileges to the new company, by virtue of the general act of April 4, 1863. S. & S. 131. The corporate capacity of the new company can not be collaterally impeached or questioned. *Webb* v. *Moler*, 8 Ohio, 548; 5 Ala. 787. The record of the suit of Noah L. Wilson, trustee, against the stockholders and creditors of the original company also proves that nearly all the old stock was surrendered in exchange for stock in the new company. The effect of all this was, the old company and its stock were defunct prior to 1868. Its charter was virtually surrendered.

IV. The risk of returning the stock being on the plaintiff in error, and the stock destroyed, the only possible measure of damages was its value at the time of the loan. The court had no other alternative. No intermediate time between the loan in 1857 and the demand in 1868 could be selected. The court was, therefore, unavoidably remitted to the value of the stock at the time of the loan. The plaintiff in error, as vendee, is bound for compensation. He owes the plaintiff, and the stock has been lost without any fault of the latter.

V. The value at the time of the loan being the measure of damages, and the parties, by their memorandum made at the time on the loan note, having put their own valuation upon the stock, that should govern. Why else was it put there? *Taft* v. *Wildman,* 15 Ohio, 123 ; *Barret* v. *Allen,* 10 Ohio, 426; Story's Bailment, secs. 253, 253*a*. And see 2 Man., Gr. & S. 905; 3 N. H. 299; 12 Pick. 562; 10 Met. 481.

HAGANS, J.  This action is founded on two agreements, one of which is as follows:

"Borrowed of Wm. Green, Esq., one hundred and nine shares ($5,450) of the capital stock of the Marietta and Cincinnati Railroad Company, returnable on demand, with interest on said stock at the rate of eight per cent. per annum from the 1st of February last.·

"*June* 1, 1856.    ,    SAMUEL FOSDICK."

On which there is a memorandum, viz :

"109 S.—$5,450
111 S.— 5,550

$11,000
293.33—4 mos. int. at 8 per cent.
25.94—marginal int.

$11,319.27—or $6,225.60."

The other agreement is as follows:

"Borrowed of Wm. Green, Esq., certificate for one hundred and eleven shares of Marietta and Cincinnati Railway stock, bearing interest at eight per cent. from February 1, 1856; marginal interest, $25.94; to be returned on demand.      SAMUEL FOSDICK.

"*January* 12, 1857."

On which there is this memorandum:

         "111 Shares, . . . . . . . . . .$5,550
            Int. from February 1, 1856.
            Marg'n'l int., . . . . . . .    25.94."

And judgment was asked for $6,225.60, interest and costs.

On the trial it appeared that the agreements sued on were in the handwriting of the defendant, including the memoranda in figures, which were placed thereon, before the papers were delivered to the plaintiff. It seems that the parties had a large negotiation or "swap," as they call it, shortly before, amounting to over $32,000, in which the defendant transferred to the plaintiff certain stocks, including those mentioned in the agreements, in exchange for certain notes indorsed by the plaintiff to the defendant. It was claimed that the memoranda in figures at the bottom of the contracts, were intended to indicate the agreed value of the stock at the time the loans were made. Mr. Green states that this value "was ascertained and declared on an account," containing the statement of the securities involved in the "swap," which "exactly corresponds with the memoranda" in the agreements. Mr. Fosdick states that these figures simply represented the price at which these stocks were put in that bargain "—"that these figures did not represent the market value of the stock, but to show their nominal or conventual value at which he and the plaintiff had swapped the stocks and notes. The stock named in the contracts was transferred to the defendant, who afterward had sole control of it, and was never returned or offered to be returned, or paid or settled for.

There is testimony of an alleged demand by the plaintiff for the return of this stock in October, 1868. It seems that about that date the plaintiff was indebted to the defendant on the indorsements spoken of, which he afterward paid off, to an amount greater than the value of the stock, as agreed on the "swap." And Green says, as Fosdick did not press him on these indorsements, he did not press Fosdick for a return of the stock, because it would have "seemed ungenerous, if not absurd," and "greatly to my disadvantage and inconvenient" to have met the liability to the defendant. In June, 1856, the stock of the Marietta and Cincinnati Railroad Company was worth 16½ cents, and in January, 1857, 15½ cents.

It further appeared, that in June, 1860, the Court of Common Pleas of Ross county, Ohio, ordered a sale of the property and rights of the Marietta and Cincinnati Railroad Company, being insolvent, under proceedings in foreclosure of the mortgage indebtedness thereon, and afterward a majority of the bondholders and creditors and the directors of the company agreed, that after such sale the purchaser should hold the property subject to a reorganization upon a basis agreed upon; that afterward, in 1860, the legislature of Ohio passed "an act for the relief of the creditors and stockholders of the Marietta and Cincinnati Railroad Company," the purpose of which was to vest in the purchaser at such sale all the franchises, the charter and property of the corporation, and to authorize the reorganization of the company. That act provided for the issue of a preferred stock to carry out the terms of the said agreement, and for the completion of the enterprise and its connections.

Accordingly, in 1860, the franchises, property, and rights of the corporation were sold to certain persons as trustees in behalf of the mortgagees and creditors, which sale was confirmed and a conveyance made in pursuance thereof to the purchasers. In the same year, the company was afterward reorganized by the parties in interest, under the said

act of the legislature, under the style of "The Marietta and Cincinnati Railroad Company as reorganized," and the said trustees conveyed to the new corporation the property they had bought. The new corporation provided for the issue of three classes of stocks, having preferences of dividends in the order named, according to the agreement:

First preferred stock, entitled to dividends of six per cent.; second preferred stock, entitled to dividends of six per cent.; common stock, entitled to dividends of six per cent.

The court, in the decree named, and in pursuance of said agreement, set aside to N. L. Wilson, as trustee, $1,500,000 of common stock, to be distributed *pro rata* among all the stockholders and unsecured creditors of the old company—the proportion to stockholders being twenty per cent. of the stock held by them.

The trustees, being unable to distribute this stock from various causes, filed a bill to compel the parties to come in and receive it, and invoke the aid and protection of the court in the premises, and in June, 1865, the court entered a decree barring any future claim on the part of a creditor who had not filed his claim. The stock in question in this case was not presented to the trustee in that case by the defendant.

The legislature of Ohio, on the 4th April, 1863, passed "an act supplementary to an act entitled "an act to provide for the creation and regulation of incorporated companies in the State of Ohio, "passed May 1, 1852," and in February, 1865, before the entry of the last-named decree, the Marietta and Cincinnati Railroad Company, in pursuance of an order of its board of directors, conveyed by deed to the Marietta and Cincinnati Railroad Company, *as reorganized*, its franchise to be a corporation. At that time, the stock of the Marietta and Cincinnati Railroad Company had no market value—in fact, could not be sold at all. The same is true as of the time of the entry

of the decree in June, 1865, though some of the old stock was then and still is outstanding.

It has already been determined by this court, in General Term, on demurrer to the petition, that the transactions between these parties have all the legal characteristics and results of a sale of the stock in question. This opinion was based on the fact that the title to this stock passed to the defendant, as in a *mutuum;* that the identical stock borrowed was not intended or expected to be returned, but other stock of like kind and amount on demand; and the court cited *Chase* v. *Washburn,* 1 Ohio St. 244, as conclusive; Story on Bail., sec. 47; *Mallory* v. *Willis,* 4 Comst. 76. It was, in fact, a purchase by defendant, to be paid for at a future time, according to the contract, in stock of a like kind and amount, on demand, or what was equivalent to a demand. The principal, and indeed the only question that remains to be considered, is whether the judge at Special Term erred in finding that the market value of the stocks at the date of the transactions, respectively, was the true measure of the plaintiff's damages, with interest at eight per cent.; and here the plaintiff takes exception to the judgment of the court below, claiming that the parties had agreed to the value of the thing loaned according to the memoranda, and it was therefore a *valued loan;* and that according to *Taft* v. *Wildman,* 15 Ohio, 123, which was a case of "swapping," the parties in the agreement had fixed "their own terms, conditions, and prices," and that amount, viz: $6,225.60, "is the true rule of damages." Story on Bailments, secs. 253, 253a.

But, aside from the fact that the plaintiff in the pleadings seeks to recover its value, we think the testimony very clearly shows that these memoranda refer to the prices of this stock, which had been agreed upon in the *previous* transactions between them, and had no reference to an agreed valuation of the loans themselves at the time they were made. The loan transactions were wholly disconnected with the prior "swap," and these memoranda are not evidence from

which we can fix the measure of damages. The case at bar differs wholly, therefore, from those in the authorities cited. See *Keys* v. *Harwood,* 2 M. G. & S. 905; *Drown* v. *Smith,* 3 N. H. 299; *Wakefield* v. *Steedman,* 12 Pick. 562; *Jones* v. *Richardson,* 10 Met. 481.

The defendant excepts to the judgment of the court below on various grounds. It is claimed, that here was a sale, to be paid for, not in money, but in a specific article of like kind and amount, irrespective of market value, when demanded; that a demand must be alleged and proved; that the true measure of damages is the value of the article when demanded and refused; and that in no case could the measure of the damages be the value of the stock at the time of making the contracts, with eight per cent. interest. Other objections were made, but these embody them all in our view of the case; and a very large number of authorities were cited to support them. *Lobdell* v. *Hopkins,* 5 Cowen, 516; *Vance* v. *Bloomer,* 20 Wend. 196; *Moore* v. *Hudson River Railroad Co.,* 12 Barb. 156; *Newman* v. *McGregor,* 5 Ohio, 349; *C. & P. R. R. Co.* v. *Kelley, etc.,* 5 Ohio St. 180; *Chase* v. *Washburn,* 1 Ohio St. 244; *Russell* v. *Ormsby,* 10 Vt. 274; *Thrall* v. *Meade's Estate,* 40 Vt. 544; *Frazer* v. *McCord,* 1 Carter (Ind.), 224; *Ewing* v. *French,* 1 Blackf. 170; *Martin* v. *Churms,* 7 Miss. 277; *Hotchkiss* v. *Newton,* 10 Geo. 560; *Wyatt* v. *Bailey,* 1 Morris (Iowa), 396; *Norman* v. *Isley,* 17 Wis. 314; *same case,* 21 Wis. 138; *Robinson* v. *Noble,* 8 Pet. 181; *Eastern Railroad Co.* v. *Benedict,* 10 Gray, 212; *Smith* v. *Berry,* 6 Shepley (Me.), 122.

It was held by the court, in the dumurrer to the petition, that no special demand was necessary, and that, so far as the remedy of the plaintiff was concerned, the transactions must be treated as money contracts. *Newman* v. *McGregor,* 5 Ohio, 352; *Trowbridge* v. *Holcomb, etc.,* 4 Ohio St. 44; *Ward* v. *Howard,* 12 Ohio St. 158. Again, the mere lapse of time, and the conduct of the defendant, in exercising continued and unequivocal dominion and control over the property, were, of themselves, a substantial conversion of

the thing loaned, and so other special demand need not be alleged or proved. *Bristol* v. *Burt*, 7 Johns. 254. At all events, the bringing of the suit was a sufficient demand. Again, it was claimed by the plaintiff, that long before the bringing of the suit the stock was not only worthless, but had, in fact and in law, *no existence*, because the Marietta and Cincinnati Railroad Company had parted with all its franchises, property, and rights of every description to the Marietta and Cincinnati Railroad Company *as reorganized*, and a demand need not therefore be made, as the law would not require a vain thing to be done; and that these considerations took this case out of the ordinary rule of the measure of damages as stated in the authorities.

The real questions involved in this view of the case, is stated thus: Do the facts avoid the necessity of a demand? If so, are they proved; and if they are, what is the measure of damages? We have already, in great part, answered these questions.

Although our Supreme Court, in *Atkinson* v. *Marietta and Cincinnati Railroad Co.*, 15 Ohio St. 23, in December, 1864, decided that the proceedings in the Ross county court of common pleas did not vest the new corporation with the corporate franchises of the old company, yet by the proceedings under the act of April 4, 1864 (S. & S. 131), which are unreversed, and by the deed of February, 1865, we think, without calling attention to the specific objections made, for all practical purposes, nothing tangible whatever remains of the old corporation or of the property which had belonged to it. At all events, the new company is a *de facto* corporation, recognized by this court constantly, in suits pending and tried, and perhaps by all the courts in the State; and its proceedings are valid until ousted by a proper suit and judgment. *Webb* v. *Moler*, 8 Ohio, 548.

Besides, we do not see how the defendant can, in a collateral proceeding like this, question the fact of its existence and the conclusion of the facts connected with its origin. It is said, however, that Green, equally with Fosdick, assumed the risk of the contingency which happened. But

it must be remembered that the maxim, "*Ejus est periculum, cujus est dominium*, applies in this case. The whole risk of loss, under the facts of this case, fell upon Fosdick. It is true that Green would have been entitled to any appreciation in the value of the stock, or subjected to any loss by depreciation; and Fosdick, on the other hand, would have been subjected to loss by appreciation of value, and entitled to the profit of a depreciation. But this goes upon the idea that the thing itself had an existence at the time a demand was made; and, in such a case, the authorities cited would be entitled to their proper force. But here was not only a depreciation of the thing loaned, until it was worthless, but a practical destruction of it; and the borrower was thus disabled, by his own delay, to restore the loan. It was impossible for him to satisfy the contract, as there was no such thing in existence as this stock, as we think is, for all practical purposes, shown by the evidence. *This is the peculiar and controlling fact in this case*, and distinguishes it from all other cases found in the books. Indeed, there is no reported case, which either counsel or the court have been able to find, which resembles this in this respect.

Now, it is said, that inasmuch as the thing loaned was worth nothing in October, 1868, when an alleged demand was made, or when the suit was brought, that the plaintiff can recover nothing. This is, undoubtedly, the ordinary rule, but there are exceptions to it. It does not apply to that class of contracts in which the plaintiff has a right to recover, not the market value at the time of demand, but the highest market value between the sale and the commencement of the action or the time of trial. *Bates* v. *Wiles*, 1 Handy, 532; *Romaine* v. *Van Allen, etc.*, 26 N. Y. 309; *Scott* v. *Rogers, etc.*, 31 N. Y. 676; *Bank of Montgomery* v. *Reese*, 26 Pa. St. 143; *West, etc.* v. *Pritchard, etc.*, 19 Conn. 212; *Kent, etc.* v. *Ginter*, 23 Ind. 1. Another exception is found in the case of contracts relating to real estate. *Buck* v. *Waddle*, 1 Ohio, 357; *Hertzoq's Adm'r* v. *Hertzog*, 34 Pa. St. 418; *McNair* v. *Compton*, 35 Pa. St. 23. And still another, where

payment of the price of merchandise is made in advance. 8 Cowen, 82; 27 Barb. 424; 12 Cal. 171; 4 Texas, 289. And see *Sargeant* v. *Covington and Cincinnati Bridge Co.,* 1 S. C. R. 354; *Henson* v. *Chastine,* 3 Jones (N. C.), 550. In *Keys* v. *Harwood,* 2 M. G. & S. 905, where the defendant, by his own act, made it impossible to deliver goods under a contract to pay with them for the services of the plaintiff, Ch. J. Tindal held that an action might be maintained for the value of the services. And in *Taft* v. *Wildman,* 15 Ohio, 123, our Supreme Court held that the plaintiff could recover the original price at which the land certificates were taken in the trade in that case. And we think the case at bar should be classed among the exceptions as to the measure of damages.

It has not escaped the attention of the court that Fosdick has not offered to return the identical, nor indeed any stock, nor explained his use of the stock borrowed. He was not bound to do either. We are to regard him as a *vendee,* and as bound to make compensation. The contract is absolute. It would be a hardship to allow him to purchase a thing of real value and to pay for it in a thing which has no existence, so to speak, or rather to pay nothing. Now, that he can not restore the stock, by his own delay, neither law nor equity will help him to substantially ignore the contract and shift the loss on the plaintiff. There is necessarily, therefore, no other mode or measure of compensation to the plaintiff but to restore to him its value at the time the loan was made. There is no intermediate time between the date of the loan and the bringing of the suit at which we can stop to ascertain the damages.

Having thus affirmed the principle upon which the judgment at Special Term proceeds, there remains the question of the interest allowed. We think the judge erred in allowing eight per cent. It should have been but six per cent. from the date of the transactions respectively, and the judgment will be modified accordingly.