John Lutes et al., Respondents, *v.* Martin Briggs et al., Commissioners, etc., Appellants.

The board of public works of the city of R. passed an ordinance providing for the deepening and enlarging of a sewer, by enlarging a portion, constructing a tunnel under a race and deepening another portion. Bids were advertised for and received which were so much per foot for " open cut " and so much for tunneling. The contract was awarded to S., a portion to be " open cut " and the portion under the race tunneled. The board subsequently resolved that the work should be entirely tunneled, and a contract was entered into with S., without a readvertisement, at the figures in his bid, which were five dollars per foot more for tunneling than for " open cut." In an action brought by persons assessed for the sewer, wherein judgment was obtained restraining the payment of any money for tunneling, save for the portion under the race; *held*, that the contract entered into was authorized by the ordinance, as the provision for deepening included any mode by which the work could be accomplished which the board, in the exercise of a reasonable discretion, should deem proper; that as the petition presented did not designate any particular mode of doing the work, there was no violation of the provision of the act of 1872 amending the city charter (§ 7, chap. 771, Laws of 1872), conferring upon the owners the right to designate the kind of improvement; that having complied with the provision of said act (§ 8), requiring advertisements for proposals, the board was not required to advertise again, but had the authority to make the change before a contract in writing was entered into, and to adopt the proposal for tunneling in the accepted bid.

Also, *held*, that the action could not be maintained by the plaintiffs, as by the provision of the charter of 1861 (§ 207, chap. 103, Laws of 1861), in

case a greater amount was assessed and collected than was required for the improvement it was to be apportioned by the council and paid to the owners of property assessed, the remedy of plaintiffs was complete against the common council, not against the commissioners; that the case was not brought within the provision of the act of 1872 (chap. 161, Laws of 1872), providing for the prosecution of municipal officers at the suit of a resident tax-payer to prevent waste, etc., as there was no claim that the commissioners were liable to waste the fund, and as that act was intended to provide for cases where the remedy was doubtful, not to a case where the statute directly points out a mode of relief.

*Lutes* v. *Briggs* (5 Hun, 67) reversed.

(Argued February 15, 1876; decided March 21, 1876.)

Appeal from judgment of the General Term of the Supreme Court, affirming a judgment in favor of plaintiffs entered upon the report of a referee. (Reported below, 5 Hun, 67.)

This action was brought to have certain proceedings of the commissioners of public works of the city of Rochester, in relation to the construction of a sewer, declared void, and to restrain the collection of an assessment therefor, as well as the payment of any moneys already collected.

On the 19th of January, 1874, after hearing the allegations of all parties, an ordinance was adopted by said commissioners, ordaining, among other things, " the deepening and enlarging of Platt street sewer from the east high bank in the rear of Jefferson mills building to the west line of State street, by enlarging that portion under said mill, constructing a tunnel under the race and deepening that portion of the sewer in Mill street and Platt street to the west line of State street, said sewer to be not less than seven feet square and arch cover, except that portion which is tunneled, and to be at least twenty-five feet deep at State street; also, to construct the necessary surface sewers, man-holes and connections for side sewers; and the whole expense shall be defrayed by an assessment upon the lots and parcels of land to be benefited thereby," and an assessment was accordingly ordered to be made for the sum of $23,000, the estimated expense, and the same was afterward made and confirmed. The commissioners duly adver-

tised for proposals for the construction of the work, and among others John D. Spalding made a proposal in an alternative form, one alternative being "for sewer through Mill and Platt streets, per lineal foot, twenty dollars," and the other alternative being "for tunnel under Mill and Platt streets, per lineal foot, twenty-five dollars." On the 10th of April, 1874, the commissioners, by resolution, awarded the contract to Spalding "for $18,680.for an open cut and tunnel sewer." On the 24th of April, 1874, some of the parties interested petitioned the commissioners "to contract for a tunnel and not for an open cut," and on the same day the commissioners passed a resolution that the vote awarding the contract for building an open sewer be reconsidered, and postponed further action. On May 1, 1874, the commissioners, without further advertisement or ordinance, awarded the contract to Spalding under the alternative in his proposal for a tunnel under Mill and Platt streets, and a formal contract was executed. Under this, Spalding went on with the work, and has received some portion of the assessment that has been collected. The change increased the expense about $4,000. The plaintiffs are some of the owners of real estate assessed, and they bring this action in behalf of themselves and all others similarly interested.

The referee, to whom the case was referred, ordered judgment for plaintiffs for a perpetual injunction, restraining the appropriation or payment of any money out of the fund raised by the assessment for any work done under that portion of the contract providing for the construction of a tunnel under Mill and Platt streets. Further facts appear in the opinion.

*J. B. Perkins* for the appellants. Plaintiffs have no right to maintain this action. (*Doolittle* v. *Supervisors,* 18 N. Y., 155, 162; *Roosevelt* v. *Draper,* 23 id., 318; *Bank* v. *Suprs.,* 25 id., 315; *West. R. R. Co.* v. *Nolan,* 48 id., 513, 519; *Kilbourne* v. *St. John,* 59 id., 21.) The action and injunction could not be sustained in equity. (*Bord* v. *Kenosha,* 17 Wis., 284; *Merrill* v. *Humphrey,* 24 Mich., 170; *Morrison* v. *Hershire,* 32 Ia., 271; *Mills* v. *Johnson,* 17 Wis., 595; *R. R.*

*Co.* v. *Morris*, 7 Kan., 215; High on Injunc., §§ 363, 364, p. 203.)

*J. C. Cochrane* for the respondents. This action was properly brought by plaintiffs. (*Sharp* v. *Spier*, 4 Hill, 76; *Greaton* v. *Griffin*, 4 Abb. [N. S.], 310; *In re Ford*, 6 Lans., 92; *In re Mayor, etc., N. Y.*, 11 J. R., 77; *Doolittle* v. *Suprs.*, 18 N. Y., 167; *People* v. *Canal Board*, 55 id., 390; *Ayres* v. *Lawrence*, 59 id., 192.) The defendants were all necessary parties. (*Fitzpatrick* v. *Flagg*, 5 Abb., 213; *People* v. *Miner*, 2 Lans., 411; *Allis* v. *Wheeler*, 10 Alb. L. J., 233, note 15.) The second letting was void. (*Sharp* v. *Spier*, 4 Hill, 76; *In re Ford*, 6 Lans., 94; *People* v. *Bd. Improvement*, 43 N. Y., 227; *Ireland* v. *City of Rochester*, 51 Barb., 414; *McCullough* v. *Mayor, etc.*, 23 Wend., 458; *In re McCormick*, 60 Barb., 128.)

MILLER, J. No question is made by the plaintiffs as to the validity of the ordinance and proceedings of the board of public works of the city of Rochester up to the time when the contract was awarded on the 10th day of April, 1874. In fact, the prayer for relief, in the complaint, only asks that the proceedings since then be declared illegal and void; or, if declared valid in part, then that no more of the assessments shall be collected than is necessary to complete the work on the sewer according to the terms and conditions of the original ordinance, and that the assessments of the plaintiffs and others be reduced accordingly. The report of the referee only found that the final letting of the contract was contrary to the ordinance and illegal and void; and the judgment only restrained the appropriation of money out of the funds raised by the assessment for work done under that portion of the contract which provided for the construction of a tunnel under Mill and Platt streets.

The objections taken to the proceedings are without foundation, and no illegality is shown in the action of the commissioners which renders them invalid. The referee's conclusion

that the contract was unauthorized is based entirely upon an erroneous construction of the terms of the ordinance under which the proceedings were instituted. He found that it did not provide for a tunnel under Platt and Mill streets, but that the sewer in question must be deepened in some other manner than by a tunnel. The improvement demanded was a sewer, and the ordinance provided that the following improvement be 'expedient, viz.: " The deepening and enlarging of Platt street outlet sewer, from the east high bank in the rear of Jefferson mills, leading to the west line of State street, by enlarging that portion under said mill, constructing a tunnel under the race, and deepening that portion of the sewer in Mill street and Platt street to the west line of State street."

It did not specify the mode in which this portion of the work should be constructed, and the general purpose of the ordinance being for a sewer, there was ample authority in the board to make a contract for it, either by an open cut or by tunneling, as might be deemed for the interests of the lot-holders or the public. The " deepening" of a sewer would of itself include any mode by which this process could be accomplished. The ordinance only provided that one part of the work should be tunneled, and as to the remainder, it was to be deepened, in the exercise of a judicious discretion of the board. The use of particular words cannot be regarded as restricting their meaning to those alone, so long as others are employed which are susceptible of a more enlarged or a different interpretation. It is enough that there was no more difficulty in deepening a sewer in one mode than by another to hold that the power to tunnel existed, and was properly exercised. Although the first adopted contract provided for an open-cut sewer, the commissioners were justified, in the exercise of a sound discretion, to make the change to a tunnel, within the strict meaning of the ordinance, upon the remonstrance of the tax-payers showing that a cutting down from the surface would seriously affect an important business street. The objections to making such a change, and thus increasing the expense, as was apparent

from the bids which had been made for a tunnel, were questions for the consideration of the commissioners; but as the right to tunnel was clearly within the ordinance, their determination cannot be reversed upon the ground that it was not provided for. It is not apparent in the proceedings that the commissioners in any way violated the provision of the seventh section of chapter 771, Session Laws of 1872, which confers upon the owners the right to designate the kind of improvement they prefer, and directs that the commissioners shall adopt and carry out said method of improvement. The petition presented did not designate any particular mode, or indicate any direct preference for one mode over another. The position that the tax-payers expressed such preference at the time the ordinance was drawn is not well founded, as we have seen that the ordinance will not bear a construction that a tunnel was not in part contemplated for the entire work, and was not clearly within the fair import and meaning of the ordinance, if it was deemed the best mode of carrying out the improvement. In fact, the advertisement and bidding-sheet being in the alternative, indicates that the commissioners intended to exercise the right to adopt either of the modes which they considered advisable.

Neither did the commissioners exceed their authority in entering into the written contract finally adopted. Nor were they required to advertise again for the letting, as they had already complied with the provisions of the charter of the city (S. L. 1872, chap. 771, § 8) by the notice which had been published as the law required. The provision in that section, to the effect that upon the day named or upon such other day as the commissioners may adjourn to, they may let the contract, and neither the principal nor sureties upon any proposal or bond shall be permitted to withdraw or cancel the same, or be released therefrom, until the commissioners shall have let the contract, and the same shall have been duly executed, evidently was intended to prevent a discharge of the sureties, and has no relation to the letting of the contract beyond this. The bidding was in the alternative, and contemplated either

of the modes thereby indicated. The commissioners were lawfully authorized to adopt the proposal for tunneling before the contract was entered into in writing, and the change made was in entire conformity with the bid which was accepted. The power of the board was not exhausted by the original award. There was no legal obstacle to an arrangement which was contemplated by the proposal and the bids, and no harm done to any person liable to be assessed, which is a lawful ground of complaint. It may also be observed that the proceedings do not show affirmatively that no adjournment was had, as they should do where reliance is placed upon any such alleged defect. Nor is there any such excess of work provided for by the contract as would authorize an adjudication that the proceedings were void for want of jurisdiction.

The considerations already presented dispose of the case, but independent of them it is not obvious upon what ground the action can be maintained by the plaintiffs. It is not sought to invalidate the assessment which is conceded to be legal, but the judgment simply restrains the payment of moneys collected, while the plaintiffs, as is conceded, have but a comparatively trifling interest, if any, in the fund in question. According to the charter (§ 207, Laws of 1861, chap. 103), if, upon the completion of the improvement, it appears that a greater amount was assessed and collected than was required, such amount must be apportioned by the common council and paid to the owners of the property on demand. The remedy of the plaintiffs was, therefore, complete against the common council if any surplus remained, and is not against the commissioners. It is no answer to say that the remedy might be doubtful if the money had been expended and paid out for any illegal expenditure, if it would not be a defence in an action brought to compel the apportionment of such surplus.

Nor is the case brought within the provisions of chapter 161 of the Laws of 1872. There is no claim that the commissioners are likely to waste the fund in question, and that act

was intended to provide for cases where the remedy was doubtful as to what person or party could maintain an action, and not to a case where the statute directly pointed out the mode of relief.

As the judgment stands in this action, the whole amount of the assessment must be collected, but none of it appropriated, for the payment of the portion of the contract providing for the construction of a tunnel under Mill and Platt streets. No legal disposition is made of the money, and some other action or proceeding will be required to distribute it. In the mean time the work must be suspended unless already completed, and if the latter, the plaintiffs reap the benefit of the improvement without contributing toward the same. It is not apparent how such a judgment can be upheld.

Judgment reversed and a new trial granted, with costs to abide the event.

All concur; CHURCH, Ch. J., not sitting.

Judgment reversed.