Reynolds, J.
[Dissenting]. — As I do not concur in the decision to be given in this case, it is, perhaps, proper that I should make a brief memorandum, stating in general terms the ground of my dissent.
The only authority for the construction of the work upon which the plaintiffs were employed, is to be found in the act of 1871, which provides that “it shall be the duty of the permanent board of water and sewerage commissioners of the city of Brooklyn, to proceed to carry into effect the plan for furnishing an increased supply of water for said city, and for such extension of the present water-works of said city, and for the construction of such further reservoirs, conduits, and other structures, as may be necessary for that purpose, heretofore submitted by said board to the common council of the city of Brooklyn, and approved by a resolution of the board of aldermen of said city on the eleventh day of July, 1870, provided, the whole expense thereof shall not exceed the sum of one million four hundred thousand dollars,” etc. To that end, the said board is authorized to acquire in the name of, and for the city of Brooklyn, title to such lands, ponds and streams, as may be necessary therefor, and upon the acquisition of the same to “cause the necessary work, to carry said plan into effect, to be done.”
It is plain that “the whole expense,” which is not to exceed the specified sum, is the entire cost, not only of acquiring the necessary lands, ponds and streams, *37 but of constructing and completing the works authorized by the act. The plans referred to are to be “ carried into effect,” and unless the law be so construed as to require the finishing of the works within the limits prescribed, the proviso would be made of no effect.
The bearing of this will very shortly appear..
At the time the contract with plaintiffs was entered into, certain expenditures had been made out of the amount authorized and appropriated as above stated, including the sum of $110,000 for lands, ponds, and streams designed for the reservoir. When the plaintiffs entered into their contract, they were bound to take notice of the limitation upon the power of the city to contract with them, and of the condition of the fund at that time. They could not bind the city by any engagements contravening the law under which its officers and representatives acted. If the contract had stipulated for a gross sum as plaintiffs’ compensation for the construction of the reservoir, and that sum had been in excess of the appropriation, or of the part thereof then at disposal, thus in terms disregarding the limitation, it would have been illegal and the plaintiffs could not have enforced it.
Instead of that, it provided for the performance of certain itemized work at detailed prices, subject to the directions of the engineers of the water board. It also provided for extra compensation for haulage beyond a given distance, an item which turned out to be over $100,000 (See 23rd and 25th findings of referees), and for modifications and changes by the chief engineer during the construction of the work (See 15th finding).
It is obvious that under a contract so elastic, the possibilities were unlimited. The plaintiffs, having-contracted upon these terms, are responsible for the natural results that flow from them. According to the findings of the referees the results are these : The plaintiffs have already performed work and furnished *38 materials, under and in pursuance of the contract, to the amount of $1,261,937.69. They have been paid on account, the sum of $1,094,137.92, leaving unpaid to the plaintiffs, on account of the work, the sum of $167,799.77. There remains unexpended of the appropriation, only $107,837.25, not enough to pay the plaintiffs by about $60,000, and yet, when the plaintiffs were stopped, the following work remained undone or incomplete, viz: Forty-seven acres of land within the original water area was unexcavated; the paving of the slopes of the dam embankment as required by the <ontract was unfinished; the paving of the slopes of the reservoir had not been done, the ground within the property-lines was not cleared, the ground was not graded where grading was necessary to a regular outline ; the work was not left in a neat and orderly condition; the rubbish, shanties and buildings erected during the progress of the work done, were not entirely removed or destroyed (See 29th finding). This work, the referees say, was so left undone or unfinished by reason of the directions given to stop and cease the excavations and the other work, and the action of the common council in taking possession of the work. The ground upon which this was claimed to be done, was that the appropriation was exhausted, and as the referees’ report shows, it was high time for the city to have made that discovery. If a contract containing in itself the germs of such fruits, so natural, if not inevitable, can be upheld, because it does not on its face, and in express terms, violate the limiting proviso, then it would be so simple and easy a matter to evade the statute, that the idea of its being a protection to the city was a complete delusion. It was only necessary to itemize the work, and the consequent uncertainties would overcome the resistance of the law.
It is no answer to say that the aggregate has been increased by reason of directions given by any of the *39 officers or agents of the city; directions which they conld give, and which the plaintiffs had bound themselves to obey. The power that was given to the city or its representatives was limited by the proviso, and the plaintiffs could not, directly or indirectly, by their contract, put into the hands of the water board or its subordinates, an authority which the legislature had expressly refused to confer.
The referees hold that the plaintiffs must be limited in their recovery to the unexpended balance of the $1,400,000, so far giving effect to the limitation contained in the law, yet they award the plaintiffs the whole of that balance, leaving a very large and material portion of the work undone or incomplete. In this I think they were in error.
As we have seen, the statute required that the sum of $1,400,000 should cover the whole expense of carrying the work to completion. It seems to me, that it is as much a violation of the statute to use all the appropriation for a part of theworlc, as it would be to finish the work and exceed the appropriation. Of course, before the work can be completed a new appropriation must be made, and, in fact, legislative aid has already been invoked to that end. If the restriction in question is valid for the purpose of limiting the plaintiffs’ recovery, I cannot see why it should not prevent their recovering at all. By the present judgment the city is compelled to pay the full price of a completed enterprise for an unfinished work which it has upon its hands. To me this looks like nullifying the law.
It is claimed, however, that the act of 1875 ratifies whatever had been done in excess of authority previously given. The section from which this result is argued, is as follows:
“§ 1. Upon the approval of the plans, specifications and estimates therefor, by the common council of the city of Brooklyn, the board of city works of said *40 city are hereby authorized to complete the Hempstead reservoir, and for that purpose the said' city is hereby authorized to issue such bonds as said common council may deem necessary, not exceeding $500,000 in amount; and no such plans, specifications and estimates, shall be approved, nor shall such work be done, except upon a stipulation, under suitable penalties, that the work aforesaid shall be fully finished and completed for the sum aforesaid.”
This recognizes the fact that the city has an unfinished reservoir upon lands which it owns, and is designed to meet the necessities of the case, by authorizing the city to raise money to complete it. It does not refer, even by implication, to any previous or then existing contracts, and I am unable to see how it can be construed into a ratification of such contracts, or a condonation of their illegality. The law simply regards the physical fact of an unfinished reservoir on city lands, and the absence of a fund to complete it. I have said it does not refer to contracts already made by the city. Perhaps, however, the latter part of the section, exacting a stipulation under penalties, that the work “shall be fully finished and completed” for the sum specified, was prompted by the fact that a former limitation had proved ineffectual. But this can hardly be considered a ratification of what the legislature was now attempting to prevent the repetition of, by additional guards.
With this view of a controlling principle in the case, it is not needful to discuss any of the other questions, especially such as might relate only to the amount of recovery.
Finding myself not in accord with my brethren, nor -with the report of the referees, I must, of course, distrust my conclusion ; and yet it appears to me so inevitable that I feel compelled to adhere to it, unpleas *41 ant as it is to differ from the weight of authority that goes with the judgment in favor of the plaintiffs.
NOTE on municipal contracts.
I. Necessity of inviting proposals (see p. 1).
The obligation to let to the lowest bidder does not exist unless imposed by express law, nor even then, according to the better opinion, is it an inflexible rule to be applied against public policy, upon a literal construction of the act, and beyond its apparent intent. The following recent cases, and the authorities referred to in them, illustrate the question:
Matter of Dugro, 50 N. Y. 513 (1872, opinion by Allen, J., all concurring). Although the charter of New York requires all work (over $1,000) to be let by contract to the lowest bidder, yet the ancient power of the city over the streets must not be impaired by doubtful construction; and if the city desire to use a patent pavement, the fact that advertising for bidders became necessarily an empty form, does not affect the validity of the contract.
To same effect, Hobart v. City of Detroit, 17 Mich. 246, 253, opinion by Cooley, Ch. J.
Bennett v. City of Jefferson, 21 La. Ann. 143 (opinion by Howe, J., 1869). The city of Jefferson has the right — under its general powers, conferred in the usual form, to control and improve streets, and raise the expense by tax or loan, — to lay a patent pavement; but when it proceeds under a clause allowing property owners to petition for an improvement to be made partly at their expense, provided that such work shall be done by contract by the lowest bidder, then they cannot adopt a patent pavement, for this precludes all real competition. The court say that the New York and Michigan cases rest on public policy, under a statute, which if literally pushed to the extreme, would cut off the cities from any patent however desirable.
Yarnold v. City of Lawrence, 15 Kans. 126, 131 (1875, opinion by Brewer, J., all concurring). Where the only provision of law as to advertising was, that before any contract for street improvements should be let, the city engineer should make and submit to the council an estimate of cost, and that in advertising for bids such estimate should be published (without expressly requiring advertising):—Held, that the city might contract without advertising; and if they advertised, were not bound to accept the lowest bidder.
County commissioners who are required by law to let to the lowest *42 bidder, have no authority to proceed without making any plans, and require each bidder for the erection of a bridge to accompany the bid with his own plans and specifications, adopting such plans as they see fit and accepting the bid accompanying them, without giving others an opportunity to bid on the plans; and a contract awarded on such a letting, was held void, as opening the door to corruption, favoritism, and fraud. People v. Commissioners, 4 Neb. 150. In this case a statute providing that the commissioners may let to the lowest bidder was held mandatory.
Section 123 in the charter of Elizabeth of 1863, — which directs that all contracts for doing work, or furnishing materials for public works, exceeding $100 in amount, shall be advertised, and given to the lowest bidder, —is inconsistent with a resolution of the common council to use the Stow foundation pavement, and advertising for proposals for the same; because it is patented, and one firm has the exclusive right to use it in the city. State v. Elizabeth, 35 N. J. 351.
Where the common council of a city, having advertised for bids for paving a specified distance, subsequently entered into a contract with the lowest bidders to pave a portion only of the distance, “or further if ordered,” and after that was completed, ordered the remainder to be done by the same contractors, — Held, that the whole work was covered by the original contract, and it was not necessary to advertise for proposals a second time for the completion of the latter portion of the work. Brevoort v. Detroit, 24 Mich. 322.
Proposals for a public contract, and an acceptance of them by the government, may be held to constitute a complete contract, although they contemplated that a written agreement should be subsequently executed, which was not done. Adams v. United States, 1 Ct. of Cl. 192.
Under 1 L. 1870, p. 876, § 13, — which authorized the commissioner of public works of New York to cause water meters to be placed in certain establishments for the purpose of ascertaining the water rate, — the commissioner has power to contract independent of the requirements of the charter (L. 1870, p. 366, § 104), passed shortly before, requiring contracts made or let by the heads of departments to be by public proposal. People ex rel. Navarro v. Van Vorst, 64 Barb. 205. S. P., Greene v. Mayor, &c. of N. Y., 60 N. Y. 303; rev’g 1 Hun, 24.
“It is a sufficient objection to a naked unexecuted contract made by an officer of the government, that he has neglected to comply with the provisions of an act of congress which requires that advertisement for proposals shall precede the letting of the contract. But, after a party has entered into a contract with the government in good faith, *43 and has so far performed his part of it, that to rescind it or declare it illegal and so incapable of execution, would subject him to loss and injury whilst the government would yet enjoy the benefit of his labor or expenditure, I do not think that such an irregularity can be set up against it. To allow the government, after it has derived the benefit of a man’s work or expenditure, under an honest contract made by a public officer within the scope of his authority, to avoid payment or to change its terms to his injury, on the technical ground that the contract was made without advertising for proposals, would be a far more intolerable violation of law than the neglect to obey the statutory direction. The magnitude of the injustice which such an application of the law would work, necessarily cures the original defect upon the maxim fieri non débet sed factum valet. See also opinion Attorney-general Cushing (6 Opin. 406). This principle is so obvious that it needs no other authority for its support than that which it finds in every honest man’s conscience.” Atty.-Gen. Bates, 10 Op. Att.-Gen. 422. Compare to the contrary, Donovan v. Mayor, &c. of N. Y., 33 N. Y. 293; rev’g 44 Barb. 180; Kingsland v. The Same, 5 Daly, 448.
As to changes where bids are required, see p. 2, ante, note.
,11. Power to malee changes in the plan or in the wo?de (see p. ).
In the case of the Milwaukee harbor, the statute authorized the city to construct a harbor, and required the common council to file accurate plans and let the contract to the lowest bidder ; and authorized them, after popular vote, to issue bonds therefor to the amount of $50,000. The contract reserved the right to the city to direct alterations or extra work. The city subsequently modified the plan, increasing the cost far beyond $50,000, and thereafter the legislature authorized them to issue such amount of bonds as might be necessary to complete the harbor, and this act the city accepted. Held, that it ratified their previous conduct in altering the plan. Hasbrouck v. Milwaukee, 21 Wis. 217, 235.
In the Rochester Sewer case, the commissioners of public works of Rochester passed an ordinance for “deepening and enlarging of Platt street sewer from, &c. to, &c. by enlarging that portion under said mill, constructing the tunnel under the race and deepening that portion of the sewer in Mill street and Platt street, to the west line on said street, said sewer to be not less than 7 feet square, and an arch cover, except that portion which is tunneled, and to be at least 25 feet deep at State street, &c.;” and ordered an assessment of $23,000, the estimated expense. They advertised for proposals accordingly, and one Spaulding made an alternative proposal, — one alternative *44 being for a sewer through Mill and Platt streets, at $30 per foot; the other for tunnel under Mill and Platt streets, $35 per foot. After awarding the contract to him for an open cut and tunnel sewer for less than $19,000, they reconsidered their vote, and without further advertisement or ordinance awarded him the contract under the other alternative for a tunnel sewer under the streets mentioned. The change increased the expense about $4,000, but the aggregate was less than the estimate.
The supreme court held that the commissioners’ ordinance having provided for a cut or merely deepening of the sewer in the streets named, they could not afterward change the plan and award a contract in the same proceedings for a tunnel sewer, and hence owners of real estate liable to assessment could enjoin the proceedings. 5 Hun, 67.
The court of appeals reversed the judgment, holding that as the general purpose of the ordinance was for a sewer, the board had ample authority to contract in a mode different from that first adopted, although it increased the expense, especially as they did so on petition of parties liable to be assessed. 1876, Op. by Miller, J., all concurring, Lutes v. Briggs, 64 N. Y. 404; rev’g 5 Hun, 67.
A preliminary estimate of the cost of a street improvement, made for the purpose of determining who is the lowest bidder, will not prevent the city from assessing a larger actual cost on the property benefited, where the discrepancy is without fraud. In such assessment, the cost of neceesary surveying and improvement certificates, collection expenses, and interest may be included. The fact that a penalty to be incurred by the contractor for delay, has not been exacted from him, to reduce the cost of the improvement, will not invalidate the assessment, when the facts are such that the proper city officers may have honestly determined that such penalty ought not to be enforced. State v. Town of Guttenburg, 38 N. J. 419.
The inhabitants of a town voted to build a town-house according to a plan and specifications agreed upon, and appointed a committee to contract for and superintend the erection of the same, “with power to make any slight alterations in the plan, which should in their wisdom be deemed just and proper.” Held, that whether the authority given to the committee to make such slight alterations would justify them in employing an architect to draw plans for the purpose, was a question for the jury. The court in effect held, that if the intent of the resolution was to authorize them to modify the exterior, or the expenditure therefor, they might employ plaintiffs. Upjohn v. Taunton, 6 Cush. (Mass.) 310.
A municipal contract providing that the work shall be done under *45 the direction of a city officer, implies that such officer may direct in regard to variations rendered necessary by the action of the city authorities. A consent to vary need not be by resolution, but may be implied. Messenger v. City of Buffalo, 21 N. Y. 196.
A municipal corporation forbidden by law to make any additional allowance beyond the legal claim under any contract with them, may nevertheless waive a forfeiture incurred by a contractor by not completing performance by the day named in the contract. People ex rel. Cunningham v. Brennan, 18 Abb. Pr. 100.
The plaintiff agreed to do the cutting and filling necessary to reduce a street to a certain grade, under tire direction and supervision of the defendant’s engineer. Held, that the contract referred to the decision of the engineer in determining the manner in which the work should be done, and that, if by his direction the plaintiff blasted to below the required grade, and then filled up to it, the city were to pay for all that work. Blake v. Dubuque, 2 Iowa, 492.
Where an application was “for re-opening a communication between Albemarle sound ... by the construction of a breakwater, ” Attorney-general Cushing advised that the breakwater was but an incident or means, and the approjrriation could be used without reference to whether a break-water was constructed or not. 6 Op. Att.-Gen. 19.
In the case of the Milwaukee harbor, held, that under the power of the harbor committee and city engineer to oversee and direct as to the best manner of executing the contract, a “protection work,” so-called, and apparently necessary to the economical building of the harbor, was within their power to direct, and the city were liable for a quantum meruit. Hasbrouck v. Milwaukee, 21 Wis. 217, 285.
Where a charter authorized the city council to construct sewers of such dimensions as they should prescribe by ordinance,' — Held, that an ordinance authorizing the construction of a sewer, “to be of such dimensions and of such materials as may be deemed requisite by the city engineer,” was invalid. St. Louis v. Clemens, 43 Mo. 395.
So, where a resolution of a county board of supervisors for the removal of the county seat, provided “suitable guarantees ” should be given for the erection of county buildings at the new location, free of cost to the county, was passed by a two-thirds vote as required by law, and the next day the approval of the guarantees was referred to a committee of the board by a majority, but not a two-thirds vote, — Held, that the resolution could not operate as an absolute authority for removal, until the condition was performed and suitable guarantees given, and that the board could not thus, by a mere *46 majority, delegate its powers to determine what was suitable; and that, notwithstanding an acceptance of guarantees by the committee, the original resolution remained, as conditional as when passed. People 13. County Officers of St. Clair, 15 Midi. 85, lS^C, opinion by Christiancy, J.
Sections 62 and 64 of L. 1843 (R. S. Ind. c. 16), — which authorizes boards of county commissioners to enter into contracts in writing for building bridges over watercourses, and to appoint one or more persons to superintend the same, — do not empower such commissioners to appoint agents to make such contracts. Potts v. Henderson, 2 Ind. 327.
Where a contract is to deliver a specified quantity of lumber to the government, and the words “ more or less ” are added, with.no reference to any other method of determining more exactly the quantity intended, or removing the uncertainty, the parties will be held to a quantity approximate to that named, allowing only a variation reasonable under the circumstances. But when the words “more or less ” have a reference to something by which the exact quantity intended can be ascertained, and the uncertainty removed, then the words will limit or extend the quantity named to that which may be ascertained and determined by the reference. Brawley v. United States, 11 Ct. of Cl. 522. Compare Harrington v. Mayor, &c. of N. Y., 10 Hun, 248.
The power vested in the head of an executive department of the government, to make contracts for work or materials for the government, does not imply power to rescind or alter such contract when made. 9 Op. Att-Gen. 80.
Where the employer reserves to itself in the contract, the privilege of changing the plan, its making such a change does not necessarily entitle the contractor to cash payment in lieu of the mode pre scribed by the contract. Hasbrouck v. Milwaukee, 17 Wis. 266.
Power of the street superintendent to enlarge the time for the completion of a contract for street improvements. Conlin v. Seamen, 22 Cal. 546; Houston v. McKenna, Id. 550; Taylor v. Palmer, 31 Id. 240.
A building contract in writing contained a stipulation, that the employer reserved the right of making alterations in the plan of the work during its construction, the expense of which should be agreed on at the time; but that no extras should be allowed for, under any pretext whatever. Held, that the employer was not liable for the increased cost of the work, occasioned by alterations made by the builder, to which the employer assented, where there was no bargain as to the price of such alterations, according to the terms of the *47 contract, and no express promise proved to pay the value of such work. Miller v. McCaffrey, 9 Penn. 245.
If a contract with a railroad company for constructing its road provides that the contractor shall not deviate from the contract, nor receive any pay for extra work, unless a written order for the same is made and signed by the engineer, the contractor cannot recover for extra work done on the verbal order of the engineer, even if there is another clause in the contract which provides that the engineer may direct alterations in and additions to the work. White v. San Rafael, &c. R. R. Co., 50 Cal. 417.
In an action to recover for labor and materials furnished under a contract to build four houses, which were destroyed before completion by the falling of a stone wall on another part of the defendant’s lot, — Held, that the contract itself implied an undertaking, on his part, that the place chosen was free from danger, unless the plaintiff had assumed the risk of danger from the condition of the property. If the loss was occasioned by an accident that could have been prevented by reasonable care, skill and expense, it should be borne by defendant. Sinnott v. Mullin, 82 Penn. St. 333. Compare School Trustees of Trenton v. Bennets, 27 N. J. L. 513; Dermott v. Jones, 2 Wall. 1.
Where a contract provided that the claimants shall erect shops,' sheds, &c., for the defendant’s workmen “ on the written order and under the direction of the party of the second part,” (the supervising architect of the treasury), — Held, that it was not enough, in an action on the contract, to allege that certain barns, boarding-houses, &c., were erected for the defendant’s workmen, “.with the full knowledge and consent of the officers of the United States, and upon their requirement, and were necessary,” &c. Dix Island Granite Co. v. United States, 12 Ct. of Cl. 624.
Plaintiff claimed to recover for rock excavation made outside the lines of the street, in sloping the sides, which the referee found to have been necessary to effect the excavation within the street. Held, that the outside excavation was not included in the contract, and as it was only necessary as a means for accomplishing the work contracted for, plaintiff was not entitled to recover therefor. Voorhis v. Mayor, &c. of New York, 62 N. Y. 498.
A made a contract to execute certain “excavation, refilling and repaving,” for B, and B agreed to pay as a “ compensation for such excavation, refilling and repaving,” as follows: “for executing the digging” and refilling, seven cents per cubic yard; and for repaving &c., four cents per square yard. A considerable portion of the work was through hard-pan and rock, worth from seventy-five cents to one *48 dollar per cubic yard; while seven cents was the lowest price for excavating common earth. Held, nevertheless, that A could recover nothing beyond the contract price, and that extrinsic evidence was not admissible to prove the value of excavating hard-pan and rock. Sherman v. Mayor, &c. of New York, 1 N. Y. 316.
The plaintiff entered into a written contract to make excavations, and commenced work, but afterwards gave notice to the defendants that he could not go on at the price named in the contract, and must abandon the work unless defendants would allow him more than the contract price for a portion found extra difficult. The defendants told him to quit that portion of the work until some arrangement could be made in regard to it; and the plaintiff did quit it for about two weeks, when it was" resumed under a new agreement, by which the plaintiff was to receive a reasonable compensation for excavating the hard material. Held, that this was such a rescission of the original contract in respect to that portion of the work, as would have precluded the defendants from maintaining an action to recover damages for its non-performance, afterwards. The new agreement was binding, and must control. Hart v. Lauman, 29 Barb. 410.
Where the plaintiff contracted in writing “to excavate and build a good, firm, and substantial sewer,” specifying particularly the prices to be paid for “all the excavation, whether hard-pan, quicksand, caves or otherwise, and “for the blasting and removing of rocks,” and claimed in this suit extra payment above the contract pi’ice, which he admitted had been paid, — Held, that no evidence was admissible to show that extra work had been done, or to show that it was rendered necessary by the discovery on the line of the sewer of a kind of rock not before known in New York, and much more difficult of removal than those usually found, and of a quality which could not possibly have been contemplated in making the contract. Devlin v. Mayor, &c. of New York, 4 Duer, 337.
The original plan for a piece of work was abandoned, and a new one adopted, which increased the expense to such a degree that the original plan could not be followed as a guide, even to the extent of the expense estimated on such original plan. The contractor, in making his estimates, acted under the directions and with the knowledge of the employers. Held, that it was not necessary for the contractor, in order to recover, to show what work and materials were embraced in the original contract, and what was extra work. Hasbrouck v. Milwaukee, 31 Wis. 217, 235.
III. Ratification or estoppel (see p. 5 ).
§ The general principle of implied contracts, and of ratification by express assent; or by acts or conduct inconsistent with any other *49 supposition than an intent to adopt and own the act, is equally applicable to municipal corporations as to individuals (Peterson v. Mayor, &c. of N. Y., 17 N. Y. 453; 1 Dill. Mun. C. § 385), except where it is invoked’to supply an absolute want of power in the corporation. The distinction is this: — -Want of power in the officer cannot be supplied by an estoppel against the officer, nor by a ratification by him ; and want of power in the corporation cannot be supplied by estoppel against it or ratification by it. But if the corporation had power, want of its delegation to the officer may be supplied by estoppel or ratification drawn from the conduct or silence of the corporation. See Brady v. Mayor, &c. of N. Y., 20 N. Y. 312.
The foundation of the exception is that statute restrictions and inhibitions cannot be evaded by resorting to estoppel by assent of officers, &c. McDonald v. Mayor, &c. of N. Y., 68 N. Y. 23; Inhabitants Weismer v. Village of Douglas, 64 N. Y. 91. Unless the city has actually collected the fund which equitably belongs to the contractor. Nelson v. Mayor, &c. of N. Y., 63 N. Y. 535; rev’g 5 Hun, 190. Where it had power to act, a municipal corporation may estop itself like other parties to a contract. County of Randolph v. Post, 93 U. S. (3 Otto) 502, 513, and cases cited. Even the State and its agents may be estopped. Peck v. Burr, 10 N. Y. 294.
The distinction is, perhaps, best illustrated in two recent California cases. In Argenti v. San Francisco, 16 Cal. 255; cited in 63 N. Y. 544 (1860, opinion by Cope, J., and Field, J., concurring in the result), it was held that a municipal corporation having had the benefit of a contract for work and materials, could not, in an action founded on the contract, contest its validity, on the ground of want of delegated authority in the officer who made the contract. The court concede that an executory contract made without authority cannot be enforced, but say that a different question arises where the contract has been executed and the corporation has received the benefit of it. In such a case they held that the law interposes an estoppel and will not permit the validity of the contract to be called in question. It appeared in that case that the improvements, — the grading and planking of certain streets, — were constructed for the exclusive benefit of the city and its inhabitants ; that they were of valuable and permanent character, and constructed in pursuance of contracts entered into with an officer of the corporation in his official capacity; that in making the improvements reliance was placed on the validity of these contracts, and the obligation of the city to pay as provided, and that the improvements were made under the immediate supervision of an officer of the city government, and when completed were approved of and received by him on behalf of the city ; that the *50 city .authorities were fully informed of the facts, and took no steps to repudiate the contracts or enlighten the plaintiff as to the disposition of the city to pay, until the city had received all the benefit to be derived from their performance.
Reld, that although there was no evidence that the agent who signed the contracts was expressly authorized to do so, the knowledge and silence of the city authorities was equivalent to a direct sanction (reviewing and relying on the New York and California authorities).
Field, J., was of opinion that as the charter vested in the common council the authority to order the improvements, and a general ordinance had designated the officer under whose supervision on behalf of the city the work should be done, and an ordinance had indicated an intent of the common council to make the improvements, and advertisement was made, proposals received, and the work awarded, the question whether the officer executing the contract on the part of the city had authority, was of no moment; the contractor, having performed as if there had been a formal contract, could recover.
In Zottman’s case, 20 Cal. 96 (1862, opinion by Field, J., Cope, J., concurring), held that where a charter prescribes a mode in which all contracts shall be made, by ordinance requiring bids, a contract made in any other way cannot be made valid by ratification or acceptance of the work. In this case, a construction contract having been made, the superintendent under whose supervision it was required to be performed, and the special committee of the common council to whose satisfaction it was to be completed, found that extra work would be necessary, and accordingly ordered it in presence of various members of the city government, and the work was done to the knowledge of the common council.
Reid, that no ordinance authorizing the extra work having been proved, the contractors could not recover for it. Their employment with knowledge of the common council, and the fact that the corporation had received the benefit, could not create liability against the statute.
This conclusion was established by Field, J., in accordance with his views in Argenti v. San Francisco, 16 Cal. 255, and (in so far as the two are inconsistent) overruling that case with the concurrence of Cope, J., who withdrew from his former opinion and concurred with Field, J.